## BRYANT v. CADLE, AS ADMINISTRATOR.
### (No. 599.)

ADVERSE POSSESSION—HOSTILE POSSESSION—CLAIM OF RIGHT—CON-
STRUCTION OF JUDGMENT AND COURT ORDER—TACKING SUCCESSIVE
POSSESSIONS.

1. Adverse possession as applied to real estate is an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right, with the intent to assert such claim against the true owner, and accompanied by such an invasion of the rights of the opposite party as to give him a cause of action, and the possession must be hostile and under a claim of right, actual, open, notorious, exclusive, and continuous. Residence on the land is not necessary to show actual possession.

2. In Wyoming there is no statute requiring adverse possession to be founded upon color of title.

3. Possession for the statutory period need not be continued in the same person; but, where there is privity between persons successively in possession holding adversely to the true title continuously, the successive periods of occupation may be united to make up the time prescribed by statute.

4. A hostile possession and claim may be based upon a void conveyance or other muniment of title.

5. In construing a judgment or decree, or an order having a like effect, its true meaning is to be ascertained, and where real estate is to be affected, the court is not necessarily governed in the matter of such construction by the strict or technical rules as to the use of words applicable in the case of a deed or other similar conveyance.

6. Where, upon a husband's desertion of his wife and removal from the state, the wife secured the appointment of a receiver of the husband's property, and subsequently in a decree granting her a divorce it was ordered that the property remain in the receiver's hands and under his control, until the further orders of the court, in trust for the use and benefit of the wife and children, and the receiver continued in possession and control, leasing the property, and mortgaging it pursuant to court orders for support of wife and children, and thereafter, upon the receiver's discharge, the former wife was granted the full, unqualified, and absolute control of the property

for the sole use and benefit of herself and children, where-upon she went into actual possession and retained the same, paying taxes, and mortgaging the property, until it was sold and conveyed by her several years later as authorized by an order of court. *Held,* in an action to recover possession brought by the former husband against one to whom the title of the grantee under said sale had been conveyed, that the court orders were sufficient as a foundation for a hostile possession and claim of right by the former wife, if they were intended and understood to divest the husband of his right and title, although they may not have been valid or legally sufficient to divest such title.

7. Upon the facts, the wife's possession was hostile to her former husband and under a claim of right, and a reference to the property in the receivership proceedings and the proceedings for the control and disposition of the property as the estate or belonging to the estate of the former husband, did not amount to a recognition of a superior right or title in him.

8. Owing to the privity between the former wife and her grantee, and the subsequent grantees, including the defendant, the latter was entitled to the benefit of her possession in support of his claim and plea of title by adverse possession.

[Decided October 5, 1909.                    (104 Pac. 23,
Rehearing denied February 7, 1910.]        106 Pac. 687.)

ERROR to the District Court, Sheridan County, Hon. CARROLL H. PARMELEE, Judge.

The facts are stated in the opinion.

*Lonabaugh & Wenzell,* and *Burgess & Kutcher,* for plaintiff in error.

It is attempted by the defendant in error to attack collaterally the court proceedings relating to the land in controversy, in which proceedings a receiver was appointed and the land was first placed under his control and subsequently in the full, unqualified and absolute control of the divorced wife of the defendant's intestate. Where such an attack is made upon court proceedings, every fact essential to complete jurisdiction is to be presumed unless

the contrary affirmatively appears; and where jurisdiction exists over the person and subject matter an order or judgment is conclusive. This rule applies as well to interlocutory as to final orders. (23 Cyc. 1055, 1078,, 1085, 1090, 1094; Van Fleet Coll. Attack, Secs. 705, 706-730.)

The trial court having held that jurisdiction was complete in the action for divorce, it is unnecessary to inquire into the prior proceedings. The finding by the court that Mrs. Scrutchfield's acts in mortgaging and selling the property were independent of the orders of the court authorizing such acts because the instruments executed by her made no reference to the court orders, was outside the record and is entirely immaterial. But the presumption is that she acted pursuant to the order of court. (Freeman Void Judicial Sales, Sec. 9.) There being no evidence as to a report by her or an appraisement of the property before sale, or a confirmation of the sale, if any of those things were essential to a conveyance of title, that they were done will be presumed. (18 Cyc. 815; 23 Cyc. 1078, 1085; Van Fleet Coll. Attack, Secs. 805-830; 8 Ency. Pl. & Pr. 945; Lessee v. Armstrong, 8 Ohio, 135; Smith v. West, 64 Ala. 34; Tipton v. Powell, 2 Coldw. 19; Moore v. Greene, 19 How. (U. S.) 69; Thomas v. Malcolm, 99 Am. Dec. 459; Smith v. Crosby, 40 Am. St. 818; Leger v. Doyle, 70 Am. Dec. 240; Evans v. Robberson, 1 Am. St. 701; Matt v. Edwards, &c., 79 N. Y. App. Div. 179.) But appraisement, report of the sale and confirmation was not necessary. Even had such acts been required, their absence is not fatal to title on collateral attack. (Van Fleet Coll. Attack, Secs. 664, 790; Lessee v. Parish, 3 O. St. 188; Neligh v. Keene, 20 N. W. 271; Noland v. Barrett, 43 Am. St. 572; Maple v. Nelson, 31 Ia. 322; Brown v. Butters, 40 Ia. 544; Davis v. Hoover, 14 N. E. 471; 17 Cyc. 1766; 18 Cyc. 809; 21 Cyc. 144; 24 Cyc. 32; 25 Ency. Law (2nd Ed.) 778; 12 Ency. Pl. & Pr. 70, 74; Wheaton v. Sexton, 4 Wheat. 503; Voorhees v. Bank, 10 Peters 477; Lessee v. McAllister, 9 O. St. 19; White v. Rand, 21 N. E. 97; Kimple v. Conway, 17 Pac. 546; Mor-

row v. Moran, 32 Pac. 770; Baxter v. O'Leary, 72 N. W. 91; Moore v. Neil, 89 Am. Dec. 303; Moore v. Green, 19 How. 69; Johnson v. Cooper, 56 Miss. 608; Miller v. McMannis, 104 Ill. 421; Smith v. West, 64 Ala. 34; Watt v. Scott, 3 Watts 79; Tipton v. Casey, 25 Mo. 584; Neill v. Cody, 26 Tex. 286; Moody v. Butler, 63 Tex. 210; Redus v. Hayden, 43 Miss. 614.) Cases which hold that confirmation of judicial sale is essential are under statutes expressly making a confirmation a prerequisite to the passing of title, but even then the equitable title may pass without confirmation, where the sale was made in good faith and in pursuance of a valid order.

So it is a rule generally that erroneous orders which are not jurisdictional will not render a sale void on collateral attack. (Blackman v. Mulhall, 104 N. W. 250; Lessee v. Moreland, 15 Ohio 255; Hughes v. Goodale, 66 Pac. 702; Hamiel v. Donnelly, 39 N. W. 210; Arrowsouth v. Harmoring, 42 O. St. 254; Palmer v. Oakley, 47 Am. Dec. 41; Seward v. Dedier, 20 N. W. 12; 17 Ency. L. (2nd Ed.) 1033, 1034; Hill v. Reynolds, 93 Me. 25; Exum v. Baker, 118 N. C. 545; 24 Cyc. 50; Menage v. Jones, 41 N. W. 972; 17 Cyc. 1344; 21 Cyc. 140; White v. Hinton, 7 Wyo. 54; Young v. Lorain, 11 Ill. 624; Sumner v. Williams, 5 Am. Dec. 83; Mitchell v. Hazen, 10 Am. Dec. 169; Worthy v. Johnson, 52 Am. Dec. 399.) Although the patent from the government vested the legal title in Scrutchfield, the equitable title vested in his wife, who made the final proof and continued after his desertion of her to reside upon the land and cultivate it. Under the issues the defendant made out a *prima facie* case (1) by showing a valid order of sale; (2) an actual sale in pursuance of the order; (3) a deed executed and possession delivered. (Paul v. Craig, 25 N. E. 538; Lytton v. Baird, 40 N. E. 1063; Milburn v. Sexton, 36 N. E. 360; Hibbard v. Smith, 6 Pac. 484; Ware v. Bradford, 36 Am. Dec. 427; Ferguson v. Miles, 44 Am. Dec. 702; Carson v. Huntington, 45 Am. Dec. 273; McEntyre v. Durham, 45 Am. Dec. 512;

Owen v. Barkes, 47 Am. Dec. 348; Brooks v. Rooney, 56 Am. Dec. 432.)

Scrutchfield's cause of action, if any, accrued more than ten years prior to the commencement of the action, and therefore Bryant had acquired title by adverse possession. The trial court erroneously excluded the period of Mrs. Scrutchfield's possession. She had actual, open, continuous and exclusive possession of the land while she was in control; and the only question as to her possession is whether it was adverse. Her possession was not subordinate to any other person. She held it under the order of court vesting in her full, unqualified and absolute control for the benefit of herself and children, and the character of her possession was sufficient in view of its hostile nature and her claim of right to constitute her possession adverse. (1 Cyc. 1003, 1027; Lantry v. Parker, 55 N. W. 962; Mc-Allister v. Hartzell, 53 N. E. 715; Bryan v. Atwater, 5 Am. Dec. 136; Fitzgerald v. Brewster, 47 N. W. 44; Roots v. Beck, 9 N. E. 698; Steel Co. v. Budzisz, 97 N. W. 166; French v. Pearce, 21 Am. Dec. 680; Patterson v. Reigh, 45 Am. Dec. 684; Limberg v. Hegenbotham, 17 Pac. 480; Tourterlotte v. Pearce, 42 N. W. 914; Murphy v. Doyle, 33 N. W. 220; Dawson v. Boat Club, 99 N. W. 17; Ranch Co. v. Babcock, 66 Pac. 878; Steel Co. v. Jeka, 95 N. W. 97.) It is immaterial whether any of the orders under which the possession of the land in controversy was controlled were valid or not. Scrutchfield could have maintained an action against the receiver and also against Mrs. Scrutchfield at any time while they were in possession. When Mrs. Scrutchfield executed a mortgage upon the land, she thereby asserted an adverse right to it; and the same is true with respect to the execution by her of the warranty deed conveying the land. Whether the orders were valid or not, Mrs. Scrutchfield recognized them as valid and under them claimed a right and title adverse to Scrutchfield. (Warr v. Honeck, 29 Pac. 1117.) It is immaterial also that Mrs. Scrutchfield acknowledged in her petitions filed in court that the legal title to the land was

in Scrutchfield. Her possession could nevertheless be adverse. (McAllister v. Hartzell, *supra*.)

Scrutchfield was estopped by his conduct from disputing the title of Bryant. He had deserted his wife and family and abandoned the land in 1889, and did not return to that county until about seventeen years thereafter, and during his absence he paid no taxes and did nothing whatever to show that he claimed any interest in the land. Nothing prevented him from knowing the conditions under which the land was being held by others, whose possession was at all times open and notorious. Indeed, he told the receiver as early as 1890 that he never intended to return. (18 Ency. Law (2nd Ed.) 97, 100, 105, 113-114, 109; 16 Cyc. 150, 160, 171, 172, 165; 15 Cyc. 76.) The doctrine of equitable estoppel applies independently of the statute of limitations, and to all classes of cases, even against an alleged expressed trust, and especially where an innocent purchaser acquires the land in good faith and makes improvements thereon. (Hawley v. Von Landen, 106 N. W. 456; Kleinclaus v. Butard, 81 Pac. 516; Kavanaugh v. Flavin, 88 Pac. 765; Barnard v. Seminary, 13 N. W. 811; Murphy v. Defoe, 99 N. W. 86; Diamond v. Manhein, 63 N. W. 495.) There is no fixed or definite rule as to the period of time which will constitute laches. Each case must be decided upon its own particular facts. (Abernathy v. Moses, 73 Ala. 381; Racine v. L. & T. Co., 86 Ill. 187; Bush v. Sherman, 80 Ill. 160; Bangher v. Woolen, 45 N. E. 94; Moss v. Geddes, 59 N. Y. Supp. 867; Mullen v. Carper, 37 W. Va. 215; Buck v. Davis, 64 Ark. 345; Hansen, &c. v. Teabout, 73 N. W. 875; Williams v. Allison, 33 Iowa 278; Bateman v. Reitler, 36 Pac. 548; Horr v. French, 68 N. W. 58; Bacon v. Chase, 50 N. W.; Berkey v. St. Paul Nat'l Bk., 56 N. W.; Loomis v. Rosenthal, 57 Pac. 55; Swift v. Smith, 79 Fed. 709; Newsom v. Wells, 5 McLean 21; Murphy v. Defoe, 99 N. W. (S. D.) 86; Wampel v. Kountz, 85 N. W. 595; Pitts v. Seavey, 55 N. W. 480; Diamond v. Manhein, 63 N. W. 495; Taylor v. Whitney, 57 N. W. 937; Gillespie v. Sawyer, 19 N. W. 449; Math-

ews v. Culbertson, 50 N. W. 201; Knapp v. Paine, 63 N.
W. 575; Barnard v. German, &c., 13 N. W. 811; Shelby
v. Bowden, N. W. (S. D.) 416; Coursolle v. Weyerhouser,
72 N. W. 697; Roeder v. Fouts, 31 Pac. 432; Harlow
v. Lake Superior Iron Co., 2 N. W. 913; Hawley v. Von
Lanken, 106 N. W. 456; 16 Cyc. 166; Long v. Olson, 88
N. W. 933; Hoor v. French, 68 N. W. 581; Berkey v.
Bank, 56 N. W. 53; Loomis v. Rosenthal, 57 Pac. 55;
Bacon v. Chase, 50 N. W. 23.) The doctrine of equitable
estoppel by laches will protect innocent purchasers at ju-
dicial, execution or tax sales, whether the sale is regular
or void.

If Bryant was not otherwise entitled to the land, he
should have been subrogated by the rights of the mort-
gagees under the mortgages which had been given to raise
funds for the support of Scrutchfield's wife and children.
(Rev. Stat. 1899, Secs. 3863, 3864; Freeman on Void Ju-
dicial Sales, &c. 52, 65; 27 Ency. Law (2nd Ed.) 203, 257,
239, 241, 242, 243.)

The actual, continuous and exclusive possession for the
statutory period accompanied by usual acts of ownership,
when otherwise unexplained, raises a presumption that the
possession is hostile or adverse. (1 Ency. Ev. 668; 1
Ency. Law (2nd Ed.) 890; 1 Cyc. 1146.) The execution
of a deed, a mortgage, or a lease is evidence that possession
is adversely held. (1 Cyc. 1149; Noyes v. Dyer, 25 Me.
468; South v. Deaton, 113 Ky. 312; Doe v. Edmonds, 127
Ala. 445.) A decree may constitute color of title. (1 Cyc.
1100.) The mere acknowledgment by a claimant that the
legal title is in another does not prevent the possession from
being adverse. (Bank v. Willson, 10 Watts 261; McAl-
lister v. Hartzell, 53 N. E. 715; Oldig v. Fisk, 73 N. W.
661; Webb v. Thiele, 77 N. W. 56; Brannon v. Brandon,
34 Pa. St. 263; Headrick v. Fritts, 93 Tenn. 270; Tobey
v. Secor, 19 N. W. 99; Mfg. Co. v. Tillman, 21 Pac. 818;
Clithers v. Fenner, 99 N. W. 1027; Bryan v. Atwater, 5
Am. Dec. 136; Fitzgerald v. Brewster, 47 N. W. 475;
Roots v. Beck, 9 N. E. 698; Steele Co. v. Budzisz, 97

N. W. 166; French v. Pearce, 21 Am. Dec. 680; Patterson v. Reigle, 45 Am. Dec. 684.) Where there are no disputed questions of fact, the appellate court will direct a judgment. (Elliott App. Proc., Sec. 567.)

*E. E. Enterline, Stotts & Blume,* and *S. P. Cadle,* for defendant in error.

The receiver was appointed without any notice whatever to Scrutchfield, the owner of the property at the time, and all of the orders entered in that proceeding, including the orders for mortgaging the property and for its sale, its possession and control, were made without notice to Scrutchfield, and without any appearance whatever by or for him. The appointment of the receiver, therefore, and all of the other proceedings in that matter were void. (Rev. Stat. 1899, Secs. 3545, 3547; Siebert v. Swartzer, 35 O. St. 661; Bavell v. Belcher, 31 O. St. 572; R. R. Co. v. Sloane, 31 O. St. 1.) There was no action. No summons was issued, and it is a universal rule that before a receiver can be appointed there must be an action commenced and pending. (Smith on Receivers, 35, 602; Beach on Receivers, Sec. 50; High on Receivers, Sec. 17; 2 Beach on Modern Equity, Secs. 931, 970; 17 Ency Pl. & Pr. 684; 20 Ency. of Law (1st Ed.) 24; Bank v. Kent, 43 Mich. 296; Jones v. Schall, 45 Mich. 296; Pressley v. Harrison, 102 Ind. 18; State v. Bank, 44 N. E. 528; Jones v. Bank, 17 Pac. 272; Mfg. Co. v. Holland, 27 Pac. 413; Guy v. Doak, 47 Kan. 236, 27 Pac. 968; Murray v. Sup. Ct., 62 Pac. 193.) It affirmatively appears from the evidence that the court was without jurisdiction in the receivership proceedings, and therefore the cases with reference to collateral attack cited by plaintiff in error are not in point. A void order is subject to collateral attack, and this rule is applicable to the void appointment of a receiver. (Van Fleet Coll. Attack, Secs. 14, 16; 1 Black on Judgments, Sec. 278; 17 Ency. Pl. & Pr. 752; McGee v. Hayes, 127 Cal. 336; Baker v. Varney, 62 Pac. 100; McCord-Brady v. Mills, 8 Wyo. 258; Chambers v. Hodges, 33 Tex. 104; Fergu-

son v. Jones, 20 Pac. 842; Frankel v. Satterfield, 19 Atl. 898; Thurber v. Miller (S. D.), 75 N. W. 900; State v. Sup. Ct., 7 Wash. 77; Whitney v. Bank, 71 Miss. 1009; Murphy v. Lyons, 28 N. W. 328.) The judgment in the divorce proceeding is null and void for want of jurisdiction, for the reason that the affidavit for constructive service did not comply with the statute. It did not set forth the cause as one in which constructive service can be made, nor was the real estate described in the affidavit. (Rev. Stat. 1899, Sec. 3522; R. Co. v. Stone, 55 Pac. 346; Roneig v. Gilette, 62 Pac. 870; Murphy v. Lyon, 28 N. W. 328.) However, the decree in no sense attempted to divest Scrutchfield, the defendant in the divorce action, of the title to the land in controversy, but, on the contrary, merely left it in charge of the receiver previously appointed, to be held by him as trustee. No application was ever made subsequently in the divorce action for a modification of the decree, nor was it ever modified. A judgment cannot be amended after the term upon an *ex parte* application without notice. (1 Black on Judgments, Sec. 164; Rev. Stat. 1899, Sec. 3520.) It is doubtful under our statute whether the court could have divested the husband of his title to the land, even if that had been attempted. (Rev. Stat. 1899, Secs. 2988, 3004; Cizek v. Cizek, 99 N. W. 28.)

Upon the discharge of the receiver he abandoned his former possession and whatever rights may have been given to him by the divorce decree, and in 1894 Mrs. Scrutchfield went out of possession, for, as found by the trial court, she did not reside upon the land after that year. Whatever rights, if any, she had under the decree of divorce were also abandoned by her. In all of the petitions filed by Mrs. Scrutchfield she described the property as belonging to James A. Scrutchfield. The court had no jurisdiction over him, or to mortgage or dispose of his property. Though it is suggested in the opposing brief that Mrs. Scrutchfield had an interest in the land by reason of the final proof that she made to secure title, no authorities are

cited in support of that proposition, and it may be assumed that none can be found.

Adverse possession, in order to be a bar, must be notorious, continuous, and exclusive and with the intent to claim title. (Cohin v. Ass'n, 23 Neb. 75; Predel v. R. Co., 85 Me. 260; Millett v. Lagomersino, 38 Pac. 308; Sunbery v. Cunningham, 96 Mich. 378; Defrieze v. Quint, 94 Cal. 653; Baker v. Anderson, 156 Mo. 566.) Assuming for the sake of argument that the divorce was valid, the only claim of title that Mrs. Scrutchfield could have would have been as beneficiary under the trust, and such title would necessarily be in subordination to the title of the plaintiff. (Lockhart v. Lockhart, 94 N. W. 466; McClanahan v. Stevenson, 91 N. W. 922; Meacham v. Bunting, 156 Ill. 586.) Our contention is supported by Fieldhouse v. Leisburg, 15 Wyo. 207. The doctrine of equitable estoppel, urged by counsel for plaintiff in error, is not applicable to a case such as this, nor do the cases cited in the brief apply here. Scrutchfield never had his day in court, and there was no decree in the divorce action which, even if valid, attempted to divest him of his title to the land; and certainly he could not have been divested of his title in a proceeding in which he was not even made a defendant. So far as improvements are concerned which had been made by Bryant, our statutes furnish him an adequate remedy for reimbursement if he had sought to take advantage of the same. (Rev. Stat. 1899, Secs. 4111 *et seq.*) Bryant was not entitled to be subrogated to the alleged right of the mortgagees. (2 Beach Mod. Eq., Sec. 798.) One who is only a volunteer cannot invoke the aid of subrogation. He must have paid upon request or security for the protection of his own rights. (2 Id. 801.) Voluntary payment of a mortgage debt by one who bears no relation to the property cannot operate to subrogate him to the rights of the mortgagee. Where one claiming title to the land voluntarily discharges a mortgage thereon given by his grantor and a third party is subsequently adjudged to be the owner in fee, the former is not entitled to have

the amount so paid adjudged a charge upon the land as against the latter. (2 Beach on Mod. Eq., Sec. 807; Opp v. Ward, 125 Ind. 24; Skinner v. Tirrell, 159 Mass. 474; Campbell v. Ass'n, 163 Pa. St. 609; Mavity v. Stover, 94 N. W. 834; Wilson v. Wilson, 57 Pac. 708.) Equity will not suspend the statute of limitations in favor of one who seeks to enforce his right of subrogation to a vendor's lien, but such right must be enforced within the statutory period. (Darrow v. Simmerhill, 93 Tex. 92; Zuellig v. Hemerlie, 60 O. St. 27; 27 Ency. Law (2nd Ed.) 272; Nielson v. Fry, 16 O. St. 552; Pollock v. Wright, 15 S. Dak. 134.) Where one discharges a lien upon land to protect his interest therein, the period of limitation is measured from the time the lien accrued in the hands of the original party, but where one secondarily employed pays the debt, the right of action on the implied contract then accrues, and the statute runs from that period to enforce the securities received by subrogation. (Crystal v. Hutton, 81 Pac. 1115; Ins. Co. v. Lumber Co., 81 Pac. 976; Charmley v. Charmley, 125 Wis. 297.) All of the mortgages in question, and especially the ones under which Bryant seeks to be subrogated, were due, paid and discharged more than eight years prior to the commencement of the action. We conclude, therefore, that the right of subrogation does not exist at all. He was not, therefore, entitled to subrogation, and if he had been, his right had become barred by the statute of limitations.

(On petition for rehearing.) Inasmuch as Mrs. Scrutchfield, during the period of her control of the land, held the same for the benefit of herself and children, and recognized the right of the court to make whatever orders it might deem best with reference to the land or the title, it would seem that she never claimed anything except the right to control and mortgage the land, and therefore did not claim the title. The order which gave her control can have meant nothing more than the right of management, and cannot be construed to mean the passing of title. (Gray v. Park, 162 Mass. 584; Anderson v. Stockdale, 62 Tex.

61; Blanton v. Meyes, 58 Tex. 422; Porter v. Thomas, 23 Ga. 471; Wolfe v. Loeb, 98 Ala. 426; Randall v. Josselyn, 10 Atl. 571.) These authorities seem to be directly opposed to the position taken by the court with reference to the character of Mrs. Scrutchfield's possession. It seems evident to us that the court at the time of appointing the receiver, as well as thereafter, up to April 23, 1897, intended to do nothing more than to provide that the income derived from the land should be used for the support of the wife and children. The fact that the mortgages were given during that period does not contravene that proposition. Mrs. Scrutchfield claimed title only jointly with her children, if she claimed any title. The latter have never made any conveyance nor granted any right of possession. One who relies on title by prescription and seeks to take to his own possession the possession of others must show that a privity existed between the holders. The deed made by Mrs. Scrutchfield purported to convey only the title belonging to her. She had no right to convey any other title, if she had any, and she could not put her grantee into rightful possession of the land, and such grantee, by taking possesison, was a wrong-doer. (Vance v. Fischer, 29 Tenn. 211; Reid v. Anderson, 13 App. D. C. 30; Shaw v. Nicholay, 30 Mo. 99; Pohlman v. Lohmeyer, 83 N. W. 201; Zweibel v. Meyers, 95 N. W. 597; Murray v. Pannaci, 67 N. J. Eq. 724; Bullen v. Arnold, 31 Me. 583; Wheeler v. Ladd, 40 Ark. 108.)

It seems that the court overlooked the contention of defendant in error that Mrs. Scrutchfield admitted in all the proceedings for mortgaging the property that she was not the owner, except as trustee, and that she was making her applications to mortgage as trustee. Moreover, in her petition asking for the permission to sell, she alleged substantially that the title to the land in question was in Scrutchfield and under the control of the court, and therefore her possession could not have been adverse. Where a party in possession of real property admits that the title is in another, although the possession may have been ad-

verse, the running of the statute is broken. (St. Paul v. Ry. Co., 63 N. W. 267, 65 N. W. 649, 68 N. W. 458; Hubb v. Ry. Co., 32 N. W. 168; Ry. Co. v. Hubb, 40 N. W. 280; Ry. Co. v. Culvert, 52 N. W. 886; McClanahan v. Stevenson, 91 N. W. 925; Lockhart v. Lockhart, 94 N. W. 461.)

We think it apparent from the several orders of the court in the receivership proceedings as well as in the divorce action that neither the court nor the receiver understood that the latter held anything more than the mere possession of the land in trust. He was ordered in reference to the mortgages as follows: "That he secure the payment of the same by a mortgage lien on the real estate of said James A. Scrutchfield." And the other orders used similar language. It seems thus to be evident that the trial court did not recognize title or ownership in either the receiver or Mrs. Scrutchfield, but recognized the title to be in Mr. Scrutchfield. In addition to the authorities cited in this brief and the former brief, the following cases strongly support the contention that the adverse possession did not commence to run until the deed executed by Mrs. Scrutchfield, April 23, 1897: Kerstrom v. Barnes, 156 Fed. 280; Hunter v. Dennis, 112 Ill. 568; Houghton v. Pierce, 203 Mo. 723; Horn v. Metzger, 234 Ill. 240; Kirby v. Kirby, 236 Ill. 255.

POTTER, CHIEF JUSTICE.

This is a suit to recover possession of real estate and damages for its alleged unlawful detention, and was brought in the District Court in Sheridan County by James A. Scrutchfield against Zachariah M. Bryant and Walter Culbertson. The suit was commenced April 12, 1907. The defendant Culbertson filed a separate answer, denying generally the allegations of the petition, after which the claim against him seems to have been abandoned. After the submission of the cause, but before it was decided, Scrutchfield died, and S. P. Cadle, as administrator of his estate, was substituted as plaintiff. The trial was to the court without a jury, and the cause was decided in favor of

the plaintiff and against the defendant Bryant, the plaintiff being awarded the immediate possession of the premises and $752.50 as damages for the wrongful occupation of the same.   Bryant brings the case here on error.

The separate answer of the defendant Bryant contains three defenses.  The first consists of a general denial.  The second pleads the statute of limitations and that the defendant and his grantors have been in the actual, open, notorious, continuous, visible, exclusive and adverse possession of the premises for more than ten years next preceding the commencement of the action, under a lawfully asserted claim of title adverse to the plaintiff.  The third defense, which is also in the nature of a cross-petition, sets up various proceedings, conveyances, and acts through which the defendant claims to have acquired title to the premises and the right to the undisturbed possession thereof, and prays that the title be quieted in him as against the plaintiff and all persons claiming under him.

The lands in controversy are situated in Sheridan County, and are described as the northeast quarter of Section 8 in Township 56 North, of Range 83 West of the sixth principal meridian.  It is conceded that the legal title was originally in James A. Scrutchfield, and that it was acquired in the following manner: Prior to 1889 he had entered the land as a homestead under the land laws of the United States.  In October of that year, while he was occupying the premises with his wife and their four minor children, he deserted them and departed from the State, and did not return to this State until shortly before the commencement of the present action.  His wife and children continued to reside upon the land, and in 1891, Mrs. Scrutchfield, as her husband's agent, offered final proof of the homestead entry, which was accepted, and a patent was afterwards issued, and duly recorded in the proper office, granting the land to said James A. Scrutchfield.  It was stipulated upon the trial that Scrutchfield had never by his own act conveyed the premises to any other party.  It also appears that

he did not reside upon or occupy the land at any time after his desertion of his family in 1889.

The facts upon which the defendant Bryant relies to sustain his title and his plea of the statute of limitations and adverse possession are as follows:

In 1889, after Scrutchfield's desertion of his family, the District Court in Sheridan County, upon the application of his wife, Virginia V. Scrutchfield, made an order appointing Cornelius H. Grinnell as receiver of all of Scrutchfield's property, and thereupon said receiver took charge of the premises here in controversy and continued in charge thereof until some time in 1893, when, by order of court, he was discharged and Mrs. Scrutchfield given the control of the property. While Grinnell had charge of the property he rented it and applied the proceeds to the support of Mrs. Scrutchfield and children. The appointment of Grinnell as receiver was made without any notice to Scrutchfield, either personal or constructive, and seems to have been made in a proceeding entitled "In the matter of the application of Virginia V. Scrutchfield for appointment of receiver for the property of James A. Scrutchfield." A reference is made in the findings to a petition of Mrs. Scrutchfield in 1889 asking for the appointment of a receiver, and to an order December 3, 1889, making the appointment. But we do not find in the record any copy of such a petition or order, nor any reference to their having been offered in evidence. We do find, however, an affidavit of Mrs. Scrutchfield entitled in such a proceeding, to the effect that her said husband had left his home and family for parts unknown, leaving some property and debts, and that affiant and her children would suffer great injury unless a receiver should be appointed to take possession of his property and assets. There appears also a motion on her behalf in the same proceeding for the appointment of a receiver.

On December 24, 1891, in an action brought in said court by Mrs. Scrutchfield for divorce, a decree was entered dissolving the marriage, granting to Mrs. Scrutch-

field the custody of the four minor children of the parties, and directing that the estate, real and personal, of James A. Scrutchfield, remain in the hands and under the control of Cornelius H. Grinnell as receiver, in trust for the use and benefit of the plaintiff, Mrs. Scrutchfield, and said children, until the further orders of the court. The petition for divorce described the land here in controversy and alleged that the title was then in the name of the defendant therein, James A. Scrutchfield, under a final receipt issued upon final proof of his homestead entry submitted by Mrs. Scrutchfield, and prayed that such proportion thereof as might be deemed equitable be set apart to the plaintiff as her absolute property, and the residue be set apart to her in trust, for the use and benefit of her four minor children. The divorce decree contained a finding that the defendant therein had been legally summoned by publication, had failed to appear, and was in default.

Two days after judgment was entered in the divorce action, the receiver, Grinnell, was, by order of court, upon his petition, authorized to borrow not to exceed $500, to provide funds for the support of the Scrutchfield children, and to secure the payment of the same by a mortgage upon the land in controversy; and thereupon he executed a mortgage upon the land for said sum, reciting therein the order of 1889 appointing him as receiver, and the order of 1891 authorizing the mortgage.

On January 18, 1893, an order was entered approving the report of Grinnell as receiver, and discharging him as such officer, and granting to Mrs. Scrutchfield "the full, unqualified and absolute control of all the estate of said James A. Scrutchfield, for the sole use and benefit of herself and her minor children," the land in controversy being described in that order as constituting said estate. The order referred to an application of Mrs. Scrutchfield, as well as a report of the receiver. The receiver's report does not appear in the record, but we find a petition of Mrs. Scrutchfield appearing to have been verified by her affidavit on December 1, 1892, which we suppose to be the applica-

tion mentioned. In that petition the previous orders, the decree of divorce, the mortgaging of the property by the receiver, and the fact that he had disposed of all the personal property were alleged, and it was represented that the petitioner was capable and willing to assume the management of the estate, and that it would be to the best interest of the petitioner and "the said minor heirs" to have said real estate placed under her control. In that connection it was alleged that, if said property be placed in her control, the rents and profits thereof, together with her labor, would be sufficient to support her and the "said minor heirs"; and it was prayed that an order be made "that the real estate of James A. Scrutchfield * * * be placed in her hands and under her control for the use and benefit of herself and her said minor heirs."

On March 21, 1893, Mrs. Scrutchfield filed a petition asking authority to borrow by mortgage upon the land a sum not to exceed $1200 to secure funds to pay the outstanding mortgage executed by the receiver, and to support and educate the said minor heirs of James A. Scrutchfield, of whom she was the mother and guardian. Thereupon an order was entered authorizing her to borrow not to exceed $1100, and to mortgage the land to secure the same. And again, on her petition filed March 13, 1895, Mrs. Scrutchfield, who had remarried in the meantime but was not living with her husband, owing to his desertion of her, was, by order of court, authorized to borrow $125 by a second mortgage for the purpose of paying the interest upon the mortgage for $1100, taxes due upon the property, and a balance remaining due for services previously rendered by the receiver. On April 16, 1896, she was authorized to execute a new second mortgage on the property for $235, to take up the one for $125, pay interest upon the first outstanding mortgage, and certain other expenses connected with the property mentioned in the petition for such order. Mortgages were executed by Mrs. Scrutchfield for the several amounts authorized, but they were executed by her without reciting therein any of the orders of the court or

referring thereto, or that she held the property under order of the court, or in trust.  On the contrary, on the face of the mortgages, she appears to have executed them as though she was the individual owner of the property.

Following the decree in the divorce action, all the orders and proceedings above alluded to were entitled "In the Matter of the Estate of James A. Scrutchfield"; and it appears that none of the petitions for authority to encumber the land, or the orders therefor, were entered upon the court records as petitions filed or orders made in the action for divorce.

Finally, on April 23, 1897, Mrs. Scrutchfield, or "Johnson," the name by which she was known after her remarriage, filed a petition, entitled "In the Matter of the Estate of James A. Scrutchfield" praying for an order authorizing her to sell said real estate, and apply the proceeds in payment of the outstanding mortgages, and an order to that effect was entered on the same day.  The petition recited the former proceedings, and alleged that the petitioner was unable to meet the interest on the first mortgage, or to pay the second mortgage, and that she could realize from a sale something for the support of herself and minor children, over and above said indebtedness. It was also alleged that her second husband was a worthless fellow, and had deserted her a few months after their marriage, which marriage had occurred in 1894, after the order granting the control of the property to her.  On the same day that the order was entered authorizing a sale, viz.: April 23, 1897, Mrs. Johnson, formerly Scrutchfield, executed a warranty deed without referring to the court proceedings, or the order under which she was authorized to act, conveying the property to one E. M. Weltner, who was the mortgagee named in and the holder of the second mortgage, for a stated consideration of $1500.  The deed seems to have been made subject to the first mortgage. On the same date, Weltner conveyed the premises by warranty deed to B. J. Gentry.  The latter, together with his wife, conveyed the property by warranty deed to John

A. Fields, May 10, 1902; and on March 3, 1904, Fields conveyed by similar deed to the defendant Bryant. After the property had been conveyed to Weltner and before his grantee conveyed it, both the outstanding mortgages given by Mrs. Scrutchfield were released.

Gentry, who bought and received a deed for the land from Weltner on the same date that it was conveyed to the latter, viz.: April 23, 1897, went into immediate, actual possession, and continued in possession until he sold and conveyed the premises, and in turn likewise the successive grantees thereafter, the defendant Bryant remaining in possession after his purchase, and being in possession at the time this suit was commenced. From the testimony, we think it appears that from the time in 1893 that Mrs. Scrutchfield was granted control of the property until the date of her deed to Weltner, she had actual possession of the same. During the period of her control the property was farmed every year either by herself or tenants, and therefore continually used for the purpose to which it was adapted. It appears that she lived upon the land until the dwelling house thereon was destroyed by fire, in either 1894 or 1895, and thereafter she lived upon an adjoining tract which she had entered as a homestead, and that she personally attended to the cultivation of the land in controversy when not rented. The testimony shows that the land was inclosed by a fence on three sides, or on every side, except where it adjoined the homestead of Mrs. Scrutchfield; the two places being thus thrown together while under her control. After Gentry bought the place he immediately commenced the building of a house upon it, and as soon as it was finished, moved into it. He also constructed a fence separating it from Mrs. Scrutchfield's homestead. The possession of Mrs. Scrutchfield during the time she had control of the land, and of the successive grantees thereafter while they had possession, respectively, appears to have been continuous, open, visible and notorious.

Reference has been made to the fact that James A. Scrutchfield, upon deserting his family, departed from this

State, and did not return until about seventeen years there-
after.   Mr. Grinnell, who, as aforesaid, had control of
the property for several years under an appointment as
receiver, testified that he saw Scrutchfield at Miles City,
Montana, in September, 1890, and then told him that he
had been appointed receiver of his property and that it
was then in his charge, and that Scrutchfield then said he
never intended to come back here.

In substance, the conclusions of law contained in the
findings of the court are as follows:   That the order of
1889 appointing a receiver was void; that the court had
jurisdiction of the land in the divorce action, and therein
it was competent to charge the same with the support of
the wife and children; that Grinnell's appointment in the
action as receiver in trust for the use and benefit of the
wife and children was valid and binding, and that the
court by its decree reserved jurisdiction over the land for
further order or disposition appropriate to the conditions
and conformable to law.   That the title of James A. Scrutch-
field to the land was not divested by the court, nor attempted
to be divested, unless by the order authorizing the sale,
and that no sale was made under that order.   That the
deed from Mrs. Johnson to E. M. Weltner was not in pur-
suance of any order of court, was ineffectual to pass title,
and was void as to James A. Scrutchfield; but that such
deed, with its covenants of seizen and warranty, was an
abandonment by Mrs. Johnson of all right of use and sup-
port charged upon the land, and effectual to constitute a
bar to any claim by her on that account.   That the title
to the land is in James A. Scrutchfield, and has continuously
been so since the issuance of the patent dated May 11, 1892;
and that the administrator of his estate is entitled to the
same from the defendant, with damages for the wrongful
detention of the same since April 12, 1903.

Although there is no specific reference in the conclusions
of law to the issue based upon the statute of limitations and
adverse possession, it is evident that the trial court regarded
the date of the deed to Weltner as the earliest date at

which the statute could have commenced to run, and as that date was April 23, 1897, and this action was brought within ten years thereafter, viz.: April 12, 1907, that the plea of the statute had failed.

As facts pertinent to that issue, the court found that in 1894 or 1895, the house on the land having been destroyed by fire, Mrs. Johnson, formerly Scrutchfield, moved therefrom and thereafter resided upon her homestead entry; that at the time of her execution of the deed to Weltner she surrendered possession of the land to him, and that the only improvements then on the land were fences on three sides, a ditch covering 80 or 90 acres, and about 40 acres broken or cultivated. Further, that Gentry erected on the land, when occupying it under claim of ownership, a house, barn, sheds, cellar, outbuildings, and various substantial improvements, which remain on the land; and that E. M. Weltner and his grantees have been in open and exclusive possession under their deeds since April 23, 1897. The findings of fact refer to the failure of the mortgages and deed executed by Mrs. Scrutchfield to mention the authority under which she was acting, and that they contained covenants of seizen and warranty in herself as grantor, and therefore it is found that she assumed thereby to act in her own right and name, ignoring the court's orders. It was also found that she had made no complete report of her acts in the premises, had made no accounting, that her acts had never been approved by the court, that the sale was made without an appraisement, and had not been approved or confirmed. It was, however, found that whatever title was acquired by E. M. Weltner at such sale passed by *mesne* conveyances successively to the grantees, Gentry, Fields and Bryant.

The case appears to have been decided upon the theory that neither the deed to Weltner, nor the mortgages after Grinnell's discharge as receiver, were executed in pursuance of an order of court, for the reason that the instruments contained personal covenants on the part of the grantor, and omitted any recital of the authority under which the

grantor might have acted, and that, therefore, such instruments were ineffectual to convey any interest in the land. Mrs. Scrutchfield's control and possession seems also to have been held or at least considered insufficient or ineffectual to constitute adverse possession or start the running of the statute of limitations.

It is to be observed that, as to the possession of Mrs. Scrutchfield, or Johnson, during the period of her control, after the destruction of the dwelling house, it was found merely that she moved from the land and resided upon her homestead entry adjoining, and did not again reside upon the land in controversy. The findings contain nothing otherwise with reference to the character of her possession, but seem to disregard as immaterial the fact that after the removal of her residence from the land she continued without interruption until she sold and conveyed it to control it, and either personally, or through tenants occupying it under her, conducted farming operations thereon, and that the extent of her possession and control was at all times indicated by the inclosure of the land on every side by a fence, except that on which it was adjoined by the tract which she owned and on which she resided, and its continued use by her. The facts of such possession and control may have been deemed immaterial upon the theory that the same was not under claim or color of title, but in subordination to the legal title of Scrutchfield, and, therefore, insufficient to amount to adverse possession. However that may be, the findings do not deny the fact of Mrs. Scrutchfield's continued possession after she ceased to reside on the land, but specifically state that she surrendered possession to her grantee. Residence on the land was not necessary even to show actual possession.

In our opinion, the serious question in the case is that arising upon the facts under the plea of the statute of limitations and adverse possession. An action for the recovery of the title or possession of lands can only be brought within ten years after the cause of action accrues. (R. S. 1899, Sec. 3451.) We do not understand the proposition

to be controverted that at least from April 23, 1897, the date of the deed to Weltner, the property was continuously held in adverse possession by the defendant Bryant and his grantors. It is contended, however, on behalf of the plaintiff below, defendant in error here, that prior to that date there was no adverse possession; and that contention seems to be based upon the theory that the possession and control of Mrs. Scrutchfield was at all times subordinate to and in recognition of the legal title of Scrutchfield.

We proceed, therefore, to consider the situation anterior to the date of the conveyance to Weltner for the purpose of determining whether the possession of the grantor in that conveyance could have been adverse within the meaning and operation of the statute of limitations, and, if so, whether there existed such privity of title or estate as would authorize the tacking of that possession to the possession of the subsequent grantees.

Adverse possession as applied to real estate is described as an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right, with the intent to assert such claim against the true owner, and accompanied by such an invasion of the rights of the opposite party as to give him a cause of action. (1 Ency. Law, 2nd Ed., 789.) The possession must be hostile and under a claim of right; it must be actual, open, notorious, exclusive, and continuous. (Id. 795.) In some jurisdictions, under a statute requiring it, the possession must be held under color of title, and where color of title is not necessary to the acquisition of title by adverse possession, its absence has the effect of limiting the right acquired to the land actually occupied. But with color of title there may be in connection with actual possession of a part constructive possession of the entire tract described and purported to be conveyed. (Id. 847; 1 Cyc. 1028, 1084; Notes to Power v. Kitching, 88 Am. St. 702-704.) There is in this state no statute requiring adverse possession to be founded upon color of title. It is not necessary that possession for the statutory preiod be continued in the same

person, but where there is privity between persons successively in possession holding adversely to the true title continuously, the successive periods of occupation may be united to make up the time prescribed by statute. (1 Cyc. 1001; 2 Tiffany Real Prop., 995, 1000; 1 Ency. L., 2nd Ed. 842.)

The evidence would amply sustain a finding that from the time she obtained personal control of the property, in 1893, Mrs. Scrutchfield was in actual, visible, open, notorious and continuous possession until she surrendered the same to her grantee in April, 1897. The point in that connection upon which the parties mainly differ is whether such possession was exclusive, hostile and under a claim of right sufficient to render it adverse.

Whatever right Mrs. Scrutchfield acquired, independent of or in addition to her right as one of the beneficiaries under the Grinnell receivership and the decree of divorce, is to be discovered in the order of January 18, 1893, as explained by the prior and subsequent proceedings. By that order it was declared that the full, unqualified and absolute control of the property was granted to her for the sole use and benefit of herself and minor children. It was entered upon a consideration of the receiver's report and an application of Mrs. Scrutchfield. The report is not in the record. The application and its allegations and prayer have been referred to. It shows upon its face that the applicant or petitioner regarded herself and children as the only persons having a beneficial interest in the property under the previous orders. It is clear that at that time Grinnell, as well as the court, understood that he held not only the *possession* in trust, but the *title* also, for immediately following the divorce decree, which had continued him in control, he asked and was granted permission to encumber the property by mortgage to provide funds for the children's support. And in the mortgage which he executed he assumed to "sell and convey" the land to the mortgagee named, "To have and to hold unto the party of

the second part and its assigns forever," subject to the usual mortgage conditions.

With relation to the question now being considered, the validity or invalidity of the order vesting control in Mrs. Scrutchfield, or the subsequent orders recognizing that control, is not important, for it is well settled that a hostile possession and claim may be based upon a void conveyance or other muniment of title. Nor are we inclined for the same reason to regard as very material the fact that subsequent to the divorce decree the caption of the various petitions and orders named or recited a different proceeding, viz.: the proceeding wherein a receiver had originally been appointed. The petitions each recited the fact of such decree and the order therein made respecting the property, and the beneficial interest of the petitioner and her children as determined by that decree, and those matters were undoubtedly considered by the court in entering the several orders. It is unnecessary to determine whether such orders were technically sufficient to amount to a modification of the divorce decree with respect to the property, since the present inquiry does not concern primarily their validity from a jurisdictional standpoint or otherwise. The question is not whether the orders were effectual to legally divest the title of Scrutchfield and vest the same in another, for if they were, a consideration of the question of adverse possession and the statute of limitations would be immaterial, but whether they were intended to have that effect and were so understood, or, in other words, whether they were sufficient as a foundation for a hostile possession and claim of right.

It is earnestly argued that the petitions of Mrs. Scrutchfield, and the orders thereon entered, as well as all the proceedings of the court, show that the title of Scrutchfield was thereby continuously recognized, and that the legal effect of the proceedings was to render the control and possession held thereunder subordinate to that title.

A careful examination of the proceedings has failed to convince us that the argument is well founded. The court

may have mistakenly regarded the property as subject to its jurisdiction and control in the proceeding of 1889, and the order of that year appointing a receiver may be conceded to be void for the want of notice, personal or constructive, if for no other reason. The trial court found that the order in the divorce decree was made with jurisdiction and was binding, but that it was temporary only in character, because it was expressly declared subject to the further orders of the court. We shall not consider that question further than to say that, so far as it was temporary, it was not afterwards changed, unless by the orders made apparently in the other proceeding. But the situation was in fact materially changed by such orders, which were acted on to the knowledge of the court, and all the proceedings must be considered together in determining the legal effect of the possession during the period in question anterior to the date of the sale and conveyance to Weltner, so far as the question of the statute of limitations is concerned.

Having been granted by the court full, absolute and unqualified control of the property for the sole use and benefit of herself and minor children, Mrs. Scrutchfield went into possession, and there is nothing before us to show that she at any time doubted the right or jurisdiction of the court to place her in such control and possession. On the contrary, shortly thereafter, viz.: on March 21, 1893, she filed a petition for permission to mortgage the property, reciting the fact of the Grinnell mortgage, that it was due, that she was without means to pay the same, and that further funds were necessary for the support and education of the children, and to place the property in condition that the rents and profits might yield a sufficient income for such support and education. It is true that the petition refers to the property as "real estate of the estate of James A. Scrutchfield" of which estate a receiver had been previously appointed, but it also states that by a later order the petitioner had been granted the full, unqualified and absolute control of said estate for the sole use and benefit of herself and minor children, and shows that she understood

that she had such an interest in the property as would authorize her to encumber it. , The permission asked was granted, and the order cannot be otherwise understood than as recognizing the rightful execution of the Grinnell mortgage, and that Mrs. Scrutchfield was entitled upon the showing made to execute a valid lien upon the property. The same may be said as to the later petitions and orders for the borrowing of money by mortgaging the property.

It is true that the mortgages executed by Mrs. Scrutchfield were executed in her own name, as well as the deed to Weltner, without reciting that she acted pursuant to an order of court, or in the capacity of trustee. It is unnecessary to consider whether that fact would have rendered the instruments invalid or ineffectual to convey the property, had there been no question of the jurisdiction of the court to order it to be incumbered or sold. It at least indicates that the party executing them claimed the right to convey the property. So far as she was a trustee, the beneficiaries were herself and children. It does not appear that she regarded herself, or that the court regarded her, as in any sense a trustee for her divorced husband. The order for the sale tends to show that the court itself construed the proceedings fixing and regulating the control of the property as a permanent sequestration thereof or a setting of the same apart for the sole use and benefit of the children and former wife of Scrutchfield, at least from the time of the order of January, 1893. Although the decree in the action for divorce does not in so many words declare the land to be set apart either temporarily or permanently for the benefit of the plaintiff in that action and her children, that was, temporarily at least, its effect, since it continued the receiver in control in trust for their use and benefit, and not merely the rents and profits, but the land itself. The order of January 18, 1893, was not limited as to the time during which it should operate, but expressly granted absolute, full and unqualified control over the property, describing it, and moreover, declared such control to be for the sole use and benefit of Mrs. Scrutchfield and

minor children, then under her control and custody.   Here, clearly, there was a setting apart of the property, and a declaration of the purpose thereof indicating an intended disposition of the entire estate.   The subsequent orders for incumbering the property would, in a case like this, seem to be consistent only with such an intention, for they contemplated a conveyance of the fee, though conditional; and the purpose is again explained by the order for the sale of the land, and the direction that the proceeds be applied to the payment of the outstanding mortgages, taxes and water assessments.   It may be that, in disposing of the property by the decree in the divorce action, the court intended the temporary feature to be confined to the control of the receiver, and the subsequent developments rather sustain that theory.   But we fail to perceive in the order of January, 1893, and the later proceedings, any intention to limit or qualify the estate granted, except that it was to be in part held in trust for the children.   In construing a judgment or decree, or an order having a like effect, its true meaning is to be ascertained, and where real estate is affected, the court is not, we think, to be necessarily governed in the matter of such construction by the strict or technical rules as to the use of words applicable in the case of a deed or other similar conveyance.

It appears then that under an order of court granting an absolute and unqualified control to her, following a decree vesting in her a beneficial interest in the property, Mrs. Scrutchfield entered into possession, executed mortgages purporting to convey the fee conditionally, and finally a deed purporting to convey the fee absolutely, and delivered possession to the grantee.   During the period of her possession she leased the land at times, taking a share of the crops as at least a part of the consideration, and in every particular so far as the evidence discloses occupied, controlled and dealt with it as the owner and one vested with title, unless, as argued by counsel for defendant in error, the references in her various petitions to the property

as real estate of the estate of James A. Scrutchfield are to be taken as admissions of a superior title in him.

The argument based upon those references, and the fact that in the orders similar references are found, attaches to them we think too much importance. The petitions were filed and the orders entered in a proceeding having for its expressed object, however irregularly, the management and disposition of the estate of said Scrutchfield, and that seems to have led the parties and the court to continue to refer to such estate as the subject of the proceeding, notwithstanding that all the personal property had been disposed of, and the real estate had been ordered into the absolute and unqualified control of the former wife of Scrutchfield for the sole use and benefit of herself and children.

To hold that such references signified a recognition of a remaining superior right or title in Scrutchfield would be wholly inconsistent with the object or relief sought by the petitions, and the acts authorized and performed, as well as with all the other facts connected with the use and control of the property. The petitions are to be more reasonably interpreted as presented in view of the position as trustee which Mrs. Scrutchfield understood that she occupied toward her children and their interest, and as having been regarded necessary to authorize a conveyance binding upon them. Unquestionably the original title, after the issuance of the government patent, was recognized as having been vested in Scrutchfield, but that title was recognized only in the sense, we think, that any grantee thereof, or one succeeding to it, might refer to and depend upon it as supporting his own immediate conveyance or muniment of title, and where the former owner has by his own act, or through judicial procedure or operation of law, disposed of or lost the rights and privileges of ownership.

Had the court found that the possession of Mrs. Scrutchfield was continuously exclusive as against Scrutchfield, as well as every other person, except her joint beneficiaries, and hostile to him and his title, and, under a claim

of right antagonistic to any right or title remaining in Scrutchfield, that finding would have been in accordance with the law and the evidence. This, together with the other facts of her possession, would have constituted it adverse. An action by Scrutchfield to recover possession might have been brought at any time during the period of Mrs. Scrutchfield's possession and control. It seems to us that the land was held in possession by one assuming and claiming by her acts to hold the same adversely to him, while exercising the rights of paramount ownership. Owing to the privity between herself and her grantee, Weltner, and the subsequent grantees, including the defendant below, plaintiff in error here, the latter is entitled to the benefit of her possession in support of his plea of the statute of limitations.

The conclusion thus reached not only seems to us the inevitable result of the application of the well settled general principles to the facts in the case, but it is well supported by authority. We refer to a few cases involving facts sufficiently analogous in relation to the point decided to entitle them to special consideration.

In John v. Smith, 91 Fed. 827, which involved land devised by will to the executors in trust for a charitable purpose, the executor in possession was held entitled to invoke the statute of limitations against an heir at law, who sought to recover possession on the ground of alleged incapacity of the testator to make a will and that the charitable devise was unenforceable. In Wells v. Wells, (Utah) 24 Pac. 752, the possession of a receiver claiming the land under judicial decree for the benefit of a party other than the plaintiff, (the latter being the holder of the original title) was held to be adverse.

In Salter v. Salter, 80 Ga. 178, 12 Am. St. 249, upon a bill filed by a wife through her next friend setting up her equity in land held by her husband, a decree had vested title in the next friend as trustee for the wife and her children. The beneficiaries thereupon took and retained possession for the statutory period, and the same was held

to have been adverse and sufficient to show title by adverse possession against purchasers at an execution sale under a judgment against the husband. Jones v. Thomas, (Mo.) 28 S. W. 76, involved a decree of divorce in favor of a wife, whereby the land in controversy was undertaken to be sequestered from the husband and passed over to the wife. The judgment of sequestration was conceded to be void. The decree was held to be color of title, and the wife's possession under it for the statutory period was held sufficient to constitute adverse possession as against her divorced husband and one who had afterwards purchased his interest at execution sale.

In Wardlaw v. McNeil, 106 Ga. 29, a consent decree in an action brought by a wife against her husband declared that the husband held title to certain lands in trust for the sole and separate use of the wife "until the further order of the court." At that time a judgment existed against the husband in favor of a creditor who was not a party to the aforesaid action, and who, therefore, was held not bound by the decree rendered therein, but it was also held that the decree was color of title in favor of the wife, which, in connection with evidence showing adverse possession by her for the statutory period would give title by prescription as against the lien of the judgment, if no levy was made upon the property thereunder until after the prescription title had ripened.

In Warr v. Honeck, (Utah) 29 Pac. 1117, it was held that where a husband had acquiesced in a void decree of divorce dividing his land equally between his wife and himself by taking possession of his half, and permitting her to remain in undisturbed possession of the remainder for 10 years, the wife had acquired title by adverse possession to the portion awarded her by the void decree. In Brewing Co. v. Payne, 197 Mo. 422, a sheriff's deed executed upon a sale under execution to satisfy a void judgment for alimony was held to be color of title, and possession under it by the grantee was held to have been adverse and to start the running of the statute.

For the reasons stated we have arrived at the conclusion that the trial court erroneously regarded the date of the deed to Weltner as the earliest possible date for the commencement of the running of the statute. There should have been a finding as to the possession of Mrs. Scrutchfield, and if found to have been actual, visible, open, notorious and continuous, then the facts as shown by the evidence in the present record would be sufficient to render it exclusive and hostile and under a continual claim of right, and not in recognition of or subordinate to any title in Scrutchfield. The judgment will therefore be reversed, and the cause remanded for a new trial.

BEARD, J., and SCOTT, J., concur.

## ON PETITION FOT REHEARING.

POTTER, CHIEF JUSTICE.

A petition for rehearing was filed in this cause by the defendant in error. The plaintiff in error filed a motion to modify the order remanding the cause for new trial, by either rendering judgment for the plaintiff in error or directing the district court to do so. Both the petition for rehearing and motion to modify were heard upon briefs and oral argument. No new point is raised by the petition for rehearing, but it is claimed that this court erred in the conclusions stated in the former opinion. Upon further consideration we perceive no reason for changing those conclusions. The facts of the case and the grounds for the decision are so fully stated in the former opinion that we deem it unnecessary to enlarge materially upon what was then said. (104 Pac. 23.) Counsel for defendant in error have called our attention to some authorities not cited in their original brief, but we think they are not in point upon the facts in this case.

In addition to the facts stated in the previous opinion showing the character of the possession and claim of Mrs. Scrutchfield prior to her sale and conveyance of the property in controversy, we may add that in 1891 the property was assessed for taxation to, and the taxes paid by, Grinnell, as re-

ceiver; and from 1893 to 1896, both inclusive, it was assessed to, and the taxes paid by, Mrs. Scrutchfield. She sold and conveyed the property in 1897. We think it impossible to escape the conclusion that Mrs. Scrutchfield's possession prior to the time that she sold and conveyed the property was hostile to the legal title of Scrutchfield and under a claim of right. The question is not material whether the language employed in the orders vesting the property in her was sufficient to divest the legal title of Scrutchfield, and hence it is unnecessary to enter into a consideration of. the meaning of the word "control" as found in the several orders of the court. During the period of Mrs. Scrutchfield's possession she held it under the court's order for the sole benefit of herself and children, and the divorce decree continuing the receiver in charge of the property for the use and benefit of herself and children, and the later order granting her full, unqualified and absolute control for the sole benefit of herself and children had, if valid, the effect at least of divesting Scrutchfield, the holder of the legal title, of any right to possession or of any beneficial interest in the property. The possession was as much hostile to him during that period as at any time afterward, and if, as claimed, all of the court orders with reference to the property were void, which is the theory upon which the action is sought to be maintained, he might have brought his action to recover possession at any time while Mrs. Scrutchfield was in possession. The rule that a trustee cannot hold adversely to the beneficiary is not applicable to the facts in this case. The motion for rehearing will be denied.

We think our order previously made in the cause should be modified as suggested. There is nothing in the findings as to the facts inconsistent with a judgment in favor of the plaintiff in error here, defendant below. While it is true, as stated in our previous opinion, that the District Court failed to make an explicit finding that the possession of Mrs. Scrutchfield was continuous, exclusive and hostile as against Scrutchfield, as well as every other person, ex-.

cept her joint beneficiaries, and under a claim of right, there is nothing in the findings to the contrary. So far as the findings of fact cover the question they are in harmony with the fact, which we think clearly established by the evidence, that Mrs. Scrutchfield's possession was continuous, open, notorious, exclusive and hostile, and under a claim of right such as to constitute adverse possession: Upon further consideration, therefore, we have concluded that a new trial of the cause could serve no useful purpose, and that upon the evidence and the law of the case the District Court should be directed to enter a judgment in favor of the defendant below, the plaintiff in error here. Our former order in the case will therefore be so modified as to direct the entering of such a judgment.

BEARD, J., and SCOTT, J., concur.