MOORE v. NEILL ET AL.

[78 South. 774, Division B.]

ADVERSE POSSESSION. *Payment of taxes.*

    Where a party has been in adverse possession of land on one side of a dividing fence under claim of title and her claim and ownership of such land has been recognized by the party on the other side of the fence for more than ten years, in such case she has the right to recover possession of such land by ejectment against a party taking possession of the land, through such party claimed that his grantors had always paid the taxes thereon.

Appeal from the circuit court of Leflore county.
Hon. F. E. Everett, Judge.

Suit by Mrs. Olga B. Moore, against W. H. Neil and others. From a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*S. E. Turner* and *Monroe McClurg,* for appellant.

The doctrine of acquiring title by actual adverse possession, is so well fixed and so generally understood, that it seems needless to cite authorities except in exceptional cases. The only exception that we can see in this case is that the appellant's title by that means, if she must be driven to that case exclusively, seems to cover every requirement of all of the law. And, for all of the law in a nut shell we have the well considered and copiously annotated opinion in *Edwards* v. *Flemming,.* 33 L. R. A. (N. S.) 23. Next to that case for clear strength in discussion of the subject is 1 Ruling Case Law, 682 et seq. See "Evidence of Actual Possession," bottom page 695, paragraphs 9 to 17 inclusive.

The effort to show abandonment of title and possession and acknowledgment of appellee's superior title because tenant Fox deducted part of two years rent, was simply absurd. Yet, the court based all the instructions upon that theory, actually destroying instruction No. 2 for plaintiff p. 38, by modifying it so as to leave to the jury the question of voluntary surrender of all claim of title, by appellant. Even if plaintiff had no title except by adverse possession that possession had long before appellee's purchase of lot 4 ripened into perfect legal title, and there was no plea or claim that her possession had been thus interrupted or abandoned before full title matured. It was nothing more than a bald intrusion and arrogant trespass by one, who nor those under whom he claimed

·ever had a shadow of right. He relied upon his deed from Mrs. Boddie which on its face warned him to stay off. Can appellants acquire title against the true owner in fee because her tenant deducted a small part of the rents for two years.

Where the claimant's possession had ripened into title, it can only be divested in the same manner that title acquired in any other way may be divested a mere abandonment does not affect it. R. C. L., p. 723, bottom par. 38.

The ''occupancy'' and ''constructive possession'' as used in the instructions was fatally erroneous in not informing the jury what that meant. *Wilson* v. *Williams Heirs,* 52 Miss. 487, a case very similar to this one, but to end an already too long brief this honorable court will find abundant authority in its own decisions, here set down for ready reference. *Stevens* v. *Johnson,* 108 Miss. 465 supported by 1 R. C. L. p. 752, as to acquiring the title to the forty-four hundredths of an acre off tip end of five acres in lot 7, and section 7, and generally on adverse possession. *Metcalf* v. *McCutchen,* 60 Miss. 145; *Jones* v. *Gaddis,* 67 Miss| 671; *Wilmot* v. *Railroad,* 76 Miss. 374; *Vicksburg R. R. Co.* v. *Barrett,* 67 Miss. 579; *Brougher* v. *Stone,* 72 Miss. 647; *R. R. Co.* v. *Land Co.,* 82 Miss. 186; *Gathings* v. *Miller,* 76 Miss. 651; *Smith* v. *Backus,* 70 So. 261.

It is most respectfully urged that appellant have judgment here and a new trial only to assess the rents.

*Yerger & Hughston,* for appellee.

The only issue presented to the lower court for determination was the issue of adverse possession, and the jury were fully and properly instructed on that issue and having found for the appellee on the

proof submitted to them their verdict cannot be disturbed by this court.

The burden of proof was on the appellant to show, by a greater weight of evidence, that she and those under whom she claims had had ten years' actual adverse possession of the land in controversy claiming to be the owners for that time. Sec. 3094, Mississippi Code of 1906. There is no evidence that appellant during the time her tenants were working this land ever claimed to be the owner of it; her husband did not claim to be the owner of the land when accused by one of appellees that he had some of their land and was requested to go down and have the boundary line settled; he did not make such a claim as would entitle him to the application of the rule laid down in *Metcalf* v. *McCutchen*, 60 Miss. 145.

Where it was held that a possession is adverse in which the holder claims, and intends to claim title, without regard to the fact that the possession and claim is held and made under an honest, but mistaken, belief, that the land is within the call of his deed.

This land, according to the proof and admissions, was not within the call of appellant's deed, and neither she nor any one for her shows by any evidence that she held to the fence line under the honest belief that her deed called to that line in the absence of any proof to the contrary the presumption would be that her possession was in subordination to the rights of the true owner. *Davis* v. *Bowmar*, 55 Miss. 871.

The court uses the following language in the *Davis case, supra*, to wit: "To acquire a title by possession two things must concur, to wit: an occupation actual or constructive and a claim of ownership. Neither is effectual without the other. No continuance of occupation, no matter how long protracted, will avail unless accompanied by claim of title; and every presumption of law is that the occupant holds in sub-

ordination, and not adversely, to the true owner. Not
only does the law presume that he entered without
title but has done so in recognition of, and subordi-
nation to, the title of the owner, but having fixed this
*prima-facie* presumption to his entry, it will not
allow him to convert it into an adverse one except
by acts which plainly demonstrate its hostile charac-
ter. Where the entry is shown to have been permis-
sive, its origin will give tone and character to all
subsequent acts; but where the nature of the entry
is unknown, its character may be determined by sub-
sequent acts, the legal presumption always being in
favor of a subordinate entry and holding.

"It devolves, therefore upon him who claims that his
possession has been adverse to establish that fact
to the satisfaction of the jury." (55 Miss. at page
765).

The instructions for the appellees in the court be-
low were based on this announcement of the law and
presented truly the law of the case. Appellant's ob-
jection to the instructions of the appellees in the
court below was that said instructions required the
proof of a claim of ownership during the period of
occupation. The statute requires such proof and every
decision does the same. The second instruction for ap-
pellees was based on the announcement of the law in
*Metcalf* v. *McCutchen, supra,* and we presume that
the court will adhere to that ruling.

The appellant has no right to complain of the in-
structions the lower court refused, since the instruc-
tion granted, gave her more than the evidence authorized,
since it said as follows: "that if the fence was built by
the heirs of Mrs. T. Money, by joint agreement to be
the dividing line between them about 1890 and so
remained and was recognized by them, and the lands
on the other side of the fence was so continually and
uninteruptedly occupied by them until the removal

of the fence in February, 1912, by the defendants, then you should find for the plaintiff.'' There is no evidence tending to show a joint agreement as to a dividing line about 1890. The only heirs who could be found by any agreement as to this line would have been Mrs. Bates and Mrs. Boddie; the other heirs could not bind them. The only attempt to show any agreement as to a dividing line was by Hughes, and he said that shortly after the Shaw map was made the heirs agreed on a division and each began to improve his part, but at that time Mrs. Boddie was an unmarried minor, she could not therefore have been a party to the agreement.

She afterwards received her deed to an undivided one fifth interest in the entire estate and the lands were not in fact divided by agreement of the parties until long after the agreement testified to by Hughes. The fence built about 1890 accordingly to the undisputed agreement was built by witness Bryant, and was not built pursuant to any agreement between the heirs, but was built for the purpose alone of protecting his crop from stock coming from the Bates land. Thus it will be seen that in this instruction she received more than her proof justified.

The second instruction granted appellant with an amendment should not have been granted at all, for there was no proof that appellant and those under whom she claims title, occupied said land under a claim of ownership as shown above, and the amendment, while announcing correctly the law, if error at all is a harmless error. A party can voluntarily surrender a claim of title, and this can be done by failing to assert claim when called upon as was done in this case.

We submit therefore that the issue in this case was properly tried and submitted to the jury under proper instructions, and there being no error in the trial of the

cause, the judgment of the lower court ought therefore to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Mrs. Olga B. Moore filed a suit of ejectment in the circuit court of Leflore county against the appellees to recover a strip of land containing eleven and twenty hundredths acres, described as "beginning at the quarter section corner in the center section 6, township 20, range 2, and run thence east ninety-three feet; thence south three hundred and twenty-one feet, to where there was a wire fence on the 14th day of May, 1914, on the south side of a public road known as the Whaley public road; thence south one degree and forty-five minutes east, five hundred feet; thence south no degree 45 minutes west, five hundred feet; thence south no degree 45 minutes east, five hundred feet; thence south no degree 45 minutes west, one thousand feet; thence south, one thousand two hundred and sixty-two feet, to the corner where some woods were on the 14th day of May, 1914; thence continue south one thousand two hundred feet, to quarter section line; thence west ninety-three feet, to quarter section line; corner in section 7, township 20, range 2; thence north five thousand two hundred and eighty feet, on the north and south quarter section line to close, containing eleven and two tenths acres"—and for rent on said land from the 1st day of January, 1912. The suit is predicated upon adverse possession of said strip by the plaintiff for a long period of time, amounting to more than ten years.

It appears that in the year 1876 one P. Money, as trustee under the will of T. Money, had a map made of certain lands known as "Money's Deadening" embracing parts of sections 6 and 7, township 20, range 2, in which the deadening was surveyed and divided into five lots, containing one hundred, fourteen acres each, and one of these lots became the property of

the plaintiff's ancestor, and an adjoining lot, being lot
No. 4, became the property of one of the chain of
grantors in the appellees' title. It appears in evidence
that, after this map was made, a fence was built upon
the line between lot 4 and 5, and from the plaintiff's
evidence this fence, remained upon said line from 1876
to 1912, at which time the appellees, who had in 1910
acquired an adjoining tract, moved the fence, so as to
place it upon the center line of section 6, which was
some ninety-three feet west of the fence line, and
what appears under the plaintiff's testimony to have
been the dividing line under the survey of "Money's
Deadening." Some years after the survey of the
"Money's Deadening" a partition was had in the
chancery court between the different heirs of T. Money;
and the respective parties went into separate posses-
sions; the one who constitutes one of the grantors in
Neill's chain of title occupying upon the east side of the
fence up to the fence, and Mrs. Moore and her ances-
tors occupying on the west side up to the fence. All
of the land on the west side of the fence was not in
actual cultivation, but the fence remained on said line
until 1911, when Neill went into possession of his
tract of land. The fence not being exactly straight,
Neill desired to place the fence straight and upon the
line between him and Mrs. Moore, and caused a sur-
veyor to make a survey, when it was discovered that
the quarter section line dividing section 6 was some
distance to the west of the fence. Neill thereupon
went to the husband of Mrs. Moore and desired him
to join in a survey, so as to determine the true line,
which Moore refused to do. Thereupon Neill moved
the fence to the quarter section line dividing section 6—
that is, dividing the southwest quarter of section 6
from the southeast quarter—and proceeded to culti-
vate the strip between the quarter section line and
the fence row as it formerly existed. Whereupon the
plaintiff brought this suit.

There is no dispute of the fact that the lands were used by the respective parties up to the fence row as it formerly stood but the appellees contend that there was no sufficient proof of claim of adverse ownership on the part of Mrs. Moore and her chain of title, that the taxes had been assessed to Mrs. Moore to the quarter section line, and that the strip in controversy had been assessed to and paid on by Neill and his grantor during the entire period of time. There was considerable evidence taken by the plaintiff in the suit, which we think established without controversy the fact of possession and claim and recognition of ownership in Mrs. Moore as to her side of the fence, and as to Neill's grantors on their side of the fence for more than ten years; that is to say, from 1910 back to and including at least as far back as the year 1888. It appears in evidence that, after Neill took possession of this tract of land, Mrs. Moore was compelled to abate the rent of her land on account of the loss of the strip to the extent of fifty dollars *per annum* and that this was a reasonable rental of the strip in controversy from the 1st of January, 1912, to date. We think there should have been a peremptory instruction, on the proof in this record, for the plaintiff, for the possession of the strip of land, and for rent to the amount of fifty dollars per annum. There being no proof to show that the land rent was worth less than fifty dollars per annum, the judgment will be reversed, and judgment entered here for the plaintiff for the strip in question, and fifty dollars per annum for the years 1912, 1913, 1914, 1915, 1916, and 1917.

*Reversed, and judgment here.*