PITTS *v.* PITTS.

4-8533                                    210 S. W. 2d 502

Opinion delivered April 26, 1948.

380

*Byron Bogard,* for appellant.

*Tom F. Digby,* for appellee.

MINOR W. MILLWEE, Justice.   R. C. Pitts and Homer Pitts, brothers, purchased adjoining residential lots in Poe's Addition to the City of North Little Rock, Arkansas, in 1938 for the purpose of erecting homes thereon.   The lots are 45 by 140 feet in size and are located in Block 18 of the addition.   R. C. Pitts purchased lot 10 which lies south of lot 11, purchased by his brother.   The two brothers began improving their property immediately following their purchase.

Homer Pitts, with the assistance of his brother, constructed a three-room house on lot 11 and moved into the house with his wife and four minor children in March, 1938.   About a month later R. C. Pitts constructed a division fence on a line running lengthwise across lot 10 from the northeast corner thereof to the west, or street, line at a point 13.5 feet south of the northwest corner of the lot.   This litigation involves the title to the triangular strip off the north side of lot 10 enclosed by this fence.

The two brothers were employed by the Rock Island Railroad Co., at Tie Plant, near North Little Rock, where Homer Pitts was killed in July, 1946. Appellee, Martha Pitts, as the widow and administratrix of his estate collected a substantial sum from the railway company for the death of her husband.   In April, 1947, R. C. Pitts had a survey made of the lots and, after demanding pos-

session of the disputed strip, began removing the fence he had erected in 1938. Appellee then instituted this suit against appellants, R. C. Pitts and wife, alleging ownership of the disputed strip by adverse possession and praying that appellant be restrained from encroaching upon or interfering with her possession of the property.

In their answer, appellants denied the claim of adverse possession asserted by appellee and alleged that her use and possession of the strip of land in controversy was with the permission of appellants. The trial court found for appellee and decreed that her title to the disputed strip be quieted and appellants permanently enjoined from interfering with her possession of the property.

The testimony on behalf of appellee is to the effect that she and her deceased husband planted trees and shrubbery along the fence soon after it was erected by R. C. Pitts in 1938; that they kept the grass mowed on the strip and used a portion of it as a driveway continuously since the fence was constructed; that they have exercised all the rights of ownership and claimed title thereto since they moved on the property in 1938 without objection on the part of appellants who resided on the adjacent lot. About four years before institution of the instant suit Homer Pitts also constructed a wash shed on the strip without objection from appellants.

Appellee testified that R. C. Pitts sought a loan from her following her settlement with the railway company in the spring of 1947. On the advice of her attorney she refused to make the loan. Shortly thereafter she was notified by her brother-in-law for the first time that he claimed the strip of land in controversy and intended to place a fence on the true line as shown by the survey which he had recently caused to be made.

Neighbors of the parties testified that appellee and her husband had exercised complete control and dominion over the enclosed property for approximately nine years and that they had never heard R. C. Pitts make any

claim of ownership thereof prior to 1947. Shortly before the filing of the suit, appellee's brother, without authority from appellee, offered to settle the controversy by purchasing the disputed strip from R. C. Pitts, but this proposal was refused.

Appellant, R. C. Pitts, testified that he did not know "exactly" where the line was when he constructed the fence in 1938; that the fence was erected so as to enable his brother to have a driveway on the south side of his house and to prevent hogs which appellant kept on his lot from being so close to his brother's house; that the fence was left there to keep appellee's children out of his garden; that he had an agreement with his brother that the property was to be returned to witness, if he ever needed it; and that he did not need the property until the spring of 1947 when he decided to build a home for his daughter on the front part of his lot. He admitted that he sought a loan from appellee shortly before the controversy arose over the line and stated that he thought he offered her good security, but he denied that her refusal to grant the loan had anything to do with the boundary dispute.

A sister of the Pitts brothers testified that, shortly before the trial, appellee told her she would buy the strip of land in controversy, if R. C. Pitts would sell it to her. She also stated that she once heard Homer Pitts say he wished his brother would sell him half of his lot.

A fellow workman of the brothers testified that several years before the trial he heard R. C. Pitts tell his brother that he "lacked a few feet having his amount of footage across the lot."

J. A. Douglass testified that he had a discussion with Homer Pitts in April, 1946, when he was planning to add a room to the front, or west side, of his house. Douglass asked him why he did not build on the south side of the house and Pitts stated that he couldn't "because it would be on his brother's land." The addition was to be 14 feet wide and Pitts did not say how far the proposed

room would encroach on his brother's land. Witness estimated the distance from the south side of the house to the fence to be 12 to 14 feet.

The chancellor sustained appellee's objection to the competency of certain statements made by deceased Homer Pitts during his lifetime, but same were admitted for the purpose of the record. For reversal of the decree, appellants contend that the trial court erred in excluding this testimony; also, that the court's finding that appellee acquired title to the disputed strip by adverse possession for the statutory period is against the preponderance of the evidence.

We agree that any statements made by the deceased Homer Pitts during his lifetime and while he held possession, which might tend to show that his holding was permissive, and not adverse, were admissible and should not have been excluded. In *Russell* v. *Webb*, 96 Ark. 190, 131 S. W. 456, the court said: "It is well settled that declarations and admissions of one in possession of land, relating to the title thereof and adverse to his interest, are admissible against him; and declarations and admissions of a person, made while in possession, adverse to his title are admissible against his successors in interest and all who claim under him." This rule has been followed in later cases which are cited in *Norden* v. *Martin*, 202 Ark. 180, 149 S. W. 2d 550.

The only statement attributed to the deceased, Homer Pitts, which might tend to show the manner of his holding is that detailed by the witness J. A. Douglass to the effect that Homer Pitts stated in 1946 that he could not build the fourteen-foot addition on the south side of his house because he would encroach on his brother's property. On cross-examination, the witness stated that deceased did not say how far the proposed room would extend on appellant's lot and admitted that a slight encroachment over the line established by the fence would result from the addition. So, unless we can say that the finding of the chancellor on the issue of adverse possession is against the preponderance of the evidence, after

consideration is given to the statements attributed to the deceased, the decree must still be affirmed.

The rule to be applied in determining whether the possession of the disputed strip by appellee and her deceased husband was adverse or permissive is stated in the headnote of the case of *Wilson* v. *Hunter,* 59 Ark. 626, 28 S. W. 419, 43 Am. St. Rep. 43, as follows: ''Where one of two coterminous proprietors by mistake builds upon or encloses land of the other, intending to claim adversely merely to the real boundary line, his possession is not adverse to the other; but if his possession was acquired and held under the claim that the land was his own, his possession is adverse to the other, even though the claim of title was the result of a mistake as to the boundary.'' Numerous cases have subsequently reaffirmed the rule. Some of these are: *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444; *Goodwin* v. *Garabaldi,* 83 Ark. 74, 102 S. W. 706; *Etcherson* v. *Hamil,* 131 Ark. 87, 198 S. W. 520; *Miller* v. *Fitzgerald,* 169 Ark. 376, 275 S. W. 698; *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489; *Waters* v. *Madden,* 197 Ark. 380, 122 S. W. 2d 554.

If the line established in the erection of the fence by R. C. Pitts in 1938 was by mistake and the possession of appellee and her deceased husband was held with the intent to claim the property to the fence line as their own, without recognition of any right in the appellants, then their title by adverse possession was established. If, on the contrary, the intent of appellee was to claim only to the true boundary, the possession was permissive. It is undisputed that appellee and her deceased husband, for approximately nine years, held open, notorious, exclusive and continuous possession of the disputed strip and exclusively exercised all rights of ownership of the property. They planted trees and shrubbery along the fence immediately after its erection by appellant, R. C. Pitts, and have since used the strip as a driveway and erected a permanent building on the property without objection from appellants. However, appellants say all this was done with their permission and point to their

testimony in which they stated that Homer Pitts agreed to return the property when they needed it. There is little in the evidence to corroborate appellants' testimony that such agreement ever existed. Appellee testified that she knew nothing of such agreement and had never heard it discussed; and that she and husband at all times claimed the property as their own. None of the neighbors who testified had ever heard such agreement mentioned. The admission of R. C. Pitts that he did not know the exact location of the line when he built the fence is inconsistent with his testimony that the agreement was made. It is also significant that he did not inform appellee that he had such agreement with his brother when he decided to remove the fence in 1947. Whether appellee's refusal to lend him money precipitated a controversy that might have never arisen otherwise is a matter that the trial court was in much better position to determine than is this court on appeal.

The offer of appellee to purchase the property in controversy from R. C. Pitts after the statutory period of seven years had elapsed, if made, may be considered in determining the character of the possession during the statutory period, but will not have the effect of divesting a title that had already vested by adverse possession. The offer to purchase may have been made in order to buy peace and avoid litigation, and not in recognition of appellants' title. *Blackburn* v. *Coffee,* 142 Ark. 426, 218 S. W. 836; *Shirey* v. *Whitlow, supra*; *Baughman* v. *Forsee,* 211 Ark. 149, 199 S. W. 2d 596. The fraternal relationship of R. C. Pitts and his deceased brother is also a factor for consideration in determining whether the possession of one is hostile to the other, but such relationship is not controlling. 2 C. J. S., Adverse Possession, p. 662.

The question whether the possession of appellee and her deceased husband was adverse or permissive was one of fact. When all the evidence adduced on that issue is considered, we are unable to say that the trial court's finding, that appellee's claim of adverse possession was

duly established, is against the preponderance of the evidence.

Affirmed.