GRAYSON, et ux. *v.* ROBINSON, et al.

No. 41654          January 23, 1961          126 So. 2d 247

*Nate S. Williamson, Lester F. Williamson,* Meridian, for appellants.

*Abston & Beard,* Meridian, for appellees.

Lee, J.

Ernest M. Grayson and Wife filed their bill against W. P. Robinson and others to cancel the claims of the defendants to the NE½ of the SE¼ of the NW¼ of Section 21, Township 5 North, Range 15 in Lauderdale County, except that part thereof and certain mineral rights, which were retained by Nate S. Williamson, as described therein, and except a small tract deeded to J. F. Burrage and also described therein. Title was deraigned out of the government and to the present owners.

The answer of the defendants admitted that the complainants owned real property at the stated location, but alleged that there was a fence, which was the true line, separating the land of the complainants, to the north, and the land of defendants, to the south; and therein it was alleged that they, and their predecessors in title, by adverse possession, for more than the statutory period, even for more than thirty-one years, had

acquired title to the land south of the fence. They filed no cross bill.

At the conclusion of the evidence and a view of the premises by the court, apparently at the instance of both parties, the court held that the defendants and their predecessors in title had acquired title by adverse possession for more than the statutory period to the land in dispute. The original bill was therefore ordered to be dismissed with prejudice. A decree was entered in accordance with the finding, and the complainants appealed.

It appeared that the complainants are the owners of the record title to the north half of the forty acres in question, subject to the exceptions, as mentioned in the bill; and that the defendants are the owners of the south half of this particular forty. A copy of the survey, made for W. P. Robinson in 1953, was introduced in evidence; but the boundary line of the disputed area at the time of this trial was not laid out on the ground. It is reasonably clear that it is approximately seventy to eighty feet wide, north and south, and the length of the forty, east and west. The evidence for the defendants was to the effect that, when T. C. Burrage obtained title to the south half in 1920, there was an existing fence between these two twenty-acre parcels of land; that the same was pointed out to him and that he kept it up as such; that he claimed the land south of the fence as his own and occupied and used it in different ways until he sold it about 1950; that J. P. Burrage, his son, built a two-story house near the fence and on the disputed area in 1947, and that he and his successors continued their use and occupancy of the same; that, when the complainant Grayson, following a survey about 1953, moved the fence, shortly thereafter Robinson moved it back to its original location; and that the parties have jointly kept it up since that time.

The evidence for the complainants was to the effect that, after Nate Williamson acquired title at a com-

missioner's sale, and by deed from the City of Meridian as the result of a tax sale in 1938, he informed T. C. Burrage of his ownership of the N½ of the Forty. The witnesses conceded the existence of a fence at that time, but they said that it was down in places and would not turn cattle. It was testified that Williamson and his tenants and successors exercised various acts of possession thereover, namely, in cutting wood and going back and forth over the land. Grayson admitted that he saw the two-story house when he purchased the land; and that while he did not think the house was his when he bought the land, he was of the opinion that he could claim it. However, he did not wish to do so. He also admitted that he did not cut any timber south of the fence because he knew that this area was in dispute.

There was no change in the character of the Burrage possession after Williamson acquired title from the City of Meridian on January 6, 1938. Suit was not filed until August 11, 1959.

The trial judge, in a written opinion, said that he was convinced that T. C. Burrage, when he purchased the property in 1920, considered that the existing fence was his north line and that he occupied the land up to the fence. From the inspection of the premises, he also said that it was evident that the fence row had been at its then location for many years. He therefore concluded that the occupation and use made by the Burrages constituted adverse possession. He also held that, even though the sale for taxes ended the adverse possession at that time, still there was no change thereafter in the possession of the Burrages and their successors in title. The learned judge repeatedly made reference to his view of the premises. For instance, he said that the two-story house was visible and that it was a tremendous flag and notice to everybody that the defendants and their predecessors in title were claiming the land south of the fence.

A hedge row has been held to be sufficient as a division line. Jones v. Gaddis, 67 Miss. 761, 7 So. 489. Cf. Sproule v. Alabama and Vicksburg Railway Company, 78 Miss. 88, 29 So. 163; Moore v. Neill, 117 Miss. 862, 78 So. 774. See also 1 Am. Jur., Adverse Possession, Section 133, p. 870, where, in reference to enclosures, it is said: ''The question in such cases is whether the inclosure, like other acts of possession, is sufficient to 'fly the flag' over the land and put the true owner upon notice that his land is held under an adverse claim of ownership.''

■■ A fence, insufficient to turn stock, may still be sufficient to fly the flag and put the owner on notice of adverse possession. Snowden and McSweeny Company v. Hanley, 195 Miss. 682, 16 So. 2d 24.

■■ It is true that adverse possession could not operate to vest title while the city held the tax title to the land in question. Melvin, et ux v. Parker, 223 Miss. 430, 78 So. 2d 477. But since there was no change in the character of the possession by the Burrages and their successors in title after Williamson acquired title from the City of Meridian on January 6, 1938, and since no ouster was attempted until the filing of suit on August 11, 1959, clearly the title of the defendants ripened by adverse possession. Rotenberry v. Arnold, 212 Miss. 564, 55 So. 2d 141; York v. Haire, 236 Miss. 711, 112 So. 2d 245.

■■ Obviously the evidence was sufficient to warrant the chancellor in finding as he did. At all events, however, there is no substantial basis upon which it may be said that he was manifestly wrong.

Consequently the decree of the trial court is therefore affirmed.

Affirmed.

*McGehee, C.J.,* and *Kyle, Gillespie* and *Rodgers, JJ.,* concur.