SMITH *v.* UNDERWOOD.

5-2562                                    352 S. W. 2d 824

Opinion delivered January 15, 1962.

*J. B. Milham,* for appellant.

*Maner & Stanley,* for appellee.

CARLETON HARRIS, Chief Justice. This is a boundary line dispute. A. B. Smith, Jr. became the owner of a certain forty acres in Saline County by conveyance from his father in March, 1927. A country road, at one time used by the community, was located between this property and that of Smith's neighbor to the west. Smith built a fence eight or ten feet east of the road. In February, 1958, appellees, H. O. Underwood and wife, acquired title by purchase, of two acres of land lying immediately west of appellant's land, and thereafter, this dispute arose as to the proper boundary line. Smith instituted suit against appellees, alleging his purchase in 1927, and asserting that he had maintained a fence around the lands purchased since that time; that his possession had been adverse to all persons, and that he claimed all lands which had been under fence. The complaint further alleged that this fence had been cut by appellees, and

that the latter had constructed a fence of their own on appellant's land. The Underwoods denied the allegations, and asserted that they were record owners of the property in dispute, and that Smith had agreed to the erection of the fence which they had placed on the property. On trial, Smith's complaint was dismissed, and the court held that the east property line was the line as marked by the fence erected by appellees. From such decree, comes this appeal.

We think the evidence establishes Smith's claim of adverse possession to that portion of the property east of the fence that he had constructed. According to the testimony, he had built a net wire fence with barbed wire on top, with much of it attached to trees. Smith testified that he kept cattle on his land; that his fence was sufficient to hold the cattle on his premises; that he maintained the fence as repairs were needed. Appellant, 60 years of age, stated that his entire forty acres was under fence; the land had been fenced as long as he could remember, and certainly since 1932. His wife testified that to her personal knowledge, the fence had been in its location for twenty years. Several relatives of appellant likewise verified the existence of the fence for far more than seven years, and two neighbors, Lexie Jenkins and Alma Gantz, stated that they were familiar with the location of the Smith fence for periods respectively of thirteen years and twenty-two years. Various photographs, introduced as exhibits, show portions of the fence in question. There is really no contention that the fence was not in existence, though R. G. Anderson, son-in-law of the Underwoods, testified that he would not term it a fence, "It was a bunch of wire wrapped around trees that cows would walk over." Anderson had entered into a contract to purchase the Underwood property.[1] A survey of the property was arranged, though it is not clear whether this arrangement was made by Anderson, or another neighbor named Heath; however, appellant had nothing to do with obtaining the services of the surveyor.

_____

[1] The witness had made a payment, but subsequently abandoned his right to purchase the lands.

It would appear that the question of the proper line between Smith and Underwood arose after a survey involving the Heath and Underwood property. At any rate, after the survey relative to the boundary line between Smith and Underwood had been made, Smith was notified of the result by Anderson. L. D. Hutchingson, Saline County surveyor, who had made the survey, was contacted by Anderson, and Smith and Anderson then went to the location for the purpose of viewing the line as established by the surveyor. Stakes were set out in accordance with the survey. Anderson testified that Smith held some of the stakes while he (Anderson) drove them into the ground, and that about a month and a half later, appellant agreed that Anderson could erect a new fence in conformity with the surveyor's findings. On the basis of this testimony, appellees vigorously contend that the parties agreed upon a boundary line; however, Anderson admitted that on the occasion when Hutchingson was pointing out his location of the boundary line, Smith complained that the survey was incorrect. He also admitted that Smith complained to him after the new fence had been built. We think this testimony falls short of establishing an agreed boundary line. Smith had no part in arranging for the survey, and was not present when same was made. Admittedly, he complained about the location of the stakes, though he said he would "abide by what the law did." As previously set out, we think it was clearly established that a fence, belonging to Smith, had been in existence for a long period of time prior to the Underwoods' purchase of their property, and appellant had consistently claimed to this fence line. It is quite difficult to determine from the testimony and exhibits appearing in the record just how far east of the Smith fence the Hutchingson line is located, but we hold that irrespective of whether the Hutchingson line was in conformity with the legal description of the properties, appellant is entitled to all that portion of the property here in litigation which lies east of the old fence erected by Smith, having established his right to same by adverse possession. The decree is therefore reversed,

472

and the cause remanded with directions to render a decree not inconsistent with this opinion.