THE W. M. GULLICKSEN MANUFACTURING CO. *vs.*
ELINOR BISHOP MACNEIL & others.

Norfolk.     May 4, 1964. — June 3, 1964.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Probate Court,* Jurisdiction, Acts of fiduciary. *Jurisdiction,* Concurrent jurisdiction. *Deed,* Construction, Property conveyed, Reformation. *Equity Jurisdiction,* Reformation.

Following a deed from the trustee under the will of one who might have been the owner of two lots of land at the time of his death, conveying the lots to the beneficiaries of the trust, and a deed of the lots by them to a respondent in a registration proceeding in the Land Court claiming title to the lots in opposition to the petitioner for registration, action by the Probate Court under G. L. c. 204, § 24, rescinding the trustee's deed and ordering him to execute a deed of the lots to the petitioner for registration in confirmation of a licensed deed previously given by former trustees under the will to a predecessor in title of such petitioner was not barred on the ground that the Probate Court was attempting to try title to the lots or on the ground that its action was in competition with jurisdiction first taken by the Land Court. [573–574]

A deed by a testamentary trustee containing, in conjunction with a plan referred to, "a clear and unambiguous particular description of" three lots shown on the plan as the property conveyed did not also convey two other lots not shown or referred to on the plan, notwithstanding that such two lots might have been owned by the trustee's testator at the time of his death and that the description concluded with the recital "being all of the real estate belonging to" the testator.   [574–575]

The principle that a court of equity has power to order the reformation of deeds or the execution of confirmatory deeds to include property omitted through error was inapplicable with respect to a certain deed in which the description of the property conveyed did not include two lots where it did not appear that the negotiations between the parties to the deed covered those lots or that the grantors intended to convey them or that their omission from the deed was due to oversight or mistake.   [575–576]

PETITION filed in the Probate Court for the county of Norfolk on April 5, 1963, seeking rescission of a deed by the respondent trustee dated March 12, 1963, and an order for a conveyance to the petitioner.

The respondents appealed from a decree entered on May 22, 1963, and an amendment thereof on October 4, 1963, by *Reynolds,* J.

*Arthur H. Bloomberg* (*Lispenard B. Phister* with him) for the respondents.

*Gordon D. Boynton* for the petitioner.

WILKINS, C.J.   These are appeals by the respondents from two decrees of the Probate Court of Norfolk County. The controversy arises out of the conflicting claims of the petitioner (Gullicksen) and of the respondent Laurence E. Bunker to two lots of land in Wellesley known as the Curtis Spring lot and the Hurd Spring lot.   The other respondents are Elinor Bishop MacNeil and Mary C. Bishop, the heirs of Robert Bishop, late of Wellesley, and the only persons with an interest in a trust created under his will; and Mr. J. Haller Ramsey, a trustee under the said will appointed on March 1, 1963.

The probate judge made a full report of material facts. The probate proceedings stem from a petition still pending in the Land Court in which Gullicksen seeks to register and confirm its title to certain lands in Wellesley.   A judge of the Land Court suggested that the parties return to the

Probate Court to correct its records, if necessary. Bunker is one of the respondents in the Land Court. Gullicksen and Bunker each own a tract of land separated by land of a third person. The land which Gullicksen seeks to register is (1) a large tract, (2) Curtis Spring lot, (3) Hurd Spring lot, (4) another small lot, and (5) various rights of way to and from the small lots.

In the Land Court Bunker and Gullicksen each endeavored to prove a good record title to the Curtis Spring and the Hurd Spring lots derived from the trust under the will of Robert Bishop, who may have owned these lots at the time of his death. The two heirs executed deeds to Bunker of all their right, title, and interest in the Curtis Spring and Hurd Spring lots. The deed of Mary C. Bishop was executed on November 20, 1962, and that of Elinor Bishop MacNeil on January 22, 1963.

On January 17, 1963, Gullicksen filed a petition in the Probate Court requesting that one Higgins be appointed trustee under the will of Robert Bishop ''to fill the vacancy caused by the deaths of the last appointed trustees.'' The purpose of the petition was to enable him, as trustee, to give a confirmatory deed. No notice was served upon the respondent heirs, who, on March 1, 1963, filed a petition that Mr. Ramsey be appointed trustee. On that date the Probate Court ''through accident, mistake, or otherwise'' allowed the latter petition ''not realizing that the Gullicksen petition was first filed. This was definitely a mistake in the registry.'' On March 12, 1963, Mr. Ramsey, as trustee, conveyed the Curtis Spring and Hurd Spring lots to the respondents MacNeil and Bishop by deed recorded on March 27. On March 25 they gave a deed confirming the prior deed of each to Bunker.

On March 27, 1963, Gullicksen filed a motion to vacate the decree appointing Mr. Ramsey on the ground that its petition was filed first and that it had no notice of the later petition. The probate judge found that Gullicksen was entitled to such notice, and ruled that there was no occasion to set aside the appointment of Mr. Ramsey because the rights of

the parties and orders of the court could be enforced irrespective of the identity of the person serving as trustee.

In 1841 and 1842 Benjamin Slack, a great-great-grandfather of Bunker, conveyed small parcels of land to William Hurd and to Allen C. Curtis, respectively. Both parcels were near the center of a large tract owned by Slack and now owned by Bunker. In 1890 Rice Paper Company, which had acquired title to these two Spring lots, conveyed them to Robert Bishop.

On February 24, 1897, the will of Robert Bishop was allowed. The residue of his estate "consisting principally of my mill at Wellesley" was given in trust. Neither the executors' inventory of 1897 nor the trustees' inventory of 1942 made reference to the Curtis Spring and Hurd Spring lots.

On April 9, 1945, a decree was entered in the Probate Court on petition of the then trustees authorizing them to sell and convey real and personal estate. In the petition and decree there was contained the description: "Three certain parcels of land in Wellesley in the County of Norfolk on the Northwesterly side of Walnut Street, containing 60,750 square feet of land, more or less, together with all rights of way, rights of passage, water rights in the Charles River and the right to drain and flow from the Mill Pond, said real estate being shown as Parcel No. One (1), Parcel No. Two (2) and Parcel No. Three (3) and said right of way and river rights also being shown on a plan of the 'Robert Bishop Estate, Wellesley, Mass., Hyde & Sherry, Civil Engineers, May, 1899. (Copy) Frank E. Sherry, C. E., Nov. 1912,' or however otherwise said parcels may be measured, bounded or described, and *being all of the real estate belonging to the said Robert Bishop in the said Town of Wellesley*" (italics supplied).

On March 19, 1946, the trustees delivered to The Robert Bishop Mfg. Co. a deed conveying the property with the same description as set forth in the petition and decree.

On July 29, 1947, The Robert Bishop Mfg. Co. executed and delivered to Gullicksen a deed containing the same de-

scription and in addition the following: "Also two parcels of land on River Street in said Wellesley, one containing 12,460 square feet of land and the other containing 1280 square feet of land, as shown on Plan of Assessors of the Town of Wellesley, Page 81. Being the same premises conveyed to The Robert Bishop Mfg. Co. by deed dated March 19, 1946 . . ., and being all of the real estate shown on the above-mentioned plans and *being all of the real estate in the Town of Wellesley owned by The Robert Bishop Mfg. Co., however the same may be otherwise described*" (italics supplied). This deed was recorded on July 31, 1947, with Norfolk registry of deeds along with the Hyde & Sherry plan of May, 1899, referred to in the decree, in the trustees' deed, and in the deed to Gullicksen.

The plan shows and identifies parcel 1, 27,350 square feet; parcel 2, 1,000 square feet; and parcel 3, 32,400 square feet; a total of 60,750 square feet, as shown in the decree and in the deed of the trustees. The plan does not show or refer to the Curtis Spring and Hurd Spring lots. The use of these lots was discontinued many years ago.

"The description of the Wellesley land in the decree and in the trustees' deed together with the plan constitute a clear and unambiguous particular description of the three parcels of real estate conveyed."

On May 22, 1963, a final decree was entered which (1) rescinded the deed dated March 12, 1963, from Mr. Ramsey, trustee, to the respondents MacNeil and Bishop; (2) ordered Mr. Ramsey, as trustee, to file an inventory correcting an inventory dated May 25, 1897, of the trustees under the will of Robert Bishop by including the Hurd Spring and Curtis Spring lots, containing respectively 1,280 and 12,460 square feet; (3) ordered Mr. Ramsey, as trustee, to execute a deed confirming the deed dated March 19, 1946, by the trustees to Gullicksen's grantor by conveying the Hurd, Curtis, and Rice Spring lots, which were "by error and inadvertence" omitted from that deed of the trustees; and (4) authorized Mr. Ramsey, as trustee, to make conveyance of all real estate located in Norfolk and Suffolk counties to which he held title as trustee.

On October 4, 1963, the decree of May 22, 1963, was amended by adding to (2) the Rice Spring lot. The respondents again appealed.

1. A Probate Court may upon petition or motion reopen a case to correct errors in a decree caused by fraud or mistake. *Eldridge* v. *Eldridge,* 278 Mass. 309, 312. *Dolan* v. *Roy,* 286 Mass. 519. *Theberge* v. *Howe,* 314 Mass. 22, 25. This is equally true whether the case is under the equity or the probate jurisdiction of the court. "A probate decree may be revoked or modified on petition for any reason that would warrant a bill of review in equity, but not for other reasons." *Stein* v. *Clark,* 326 Mass. 767, 769. The cases involving equity decrees in the Superior Court are in harmony with this result. See *Thompson* v. *Goulding,* 5 Allen, 81, 83; *Hyde Park Sav. Bank* v. *Davankoskas,* 298 Mass. 421; *Fortier* v. *Department of Pub. Util.* 342 Mass. 728, 732.

The decree of March 1, 1963, was entered only because of "a mistake in the registry," See *Templer* v. *Templer, ante,* 270. It is not a valid objection that the deed of March 12, 1963, from Mr. Ramsey, as trustee, to Bishop and MacNeil given pursuant to that decree, was rescinded subsequent to their deed of March 25, 1963, to Bunker. The latter deed was merely confirmatory of deeds of the preceding November and January, and Bunker could not have relied upon the decree of March 1, 1963, in purchasing the lots.

2. The decree of May 22, 1963, however, did not stop with rescinding the Ramsey deed of March 12, but required Mr. Ramsey to perform further acts including the execution of a confirmatory deed of the Spring lots to Gullicksen. The appellants object to this part of the decree as requiring a trial of the title to these lots which, they argue, the Probate Court lacked jurisdiction to conduct. This objection is unsound. The Probate Court had jurisdiction to do what it did under G. L. (Ter. Ed.) c. 204, § 24: "If the authority or validity of an act or proceeding of the probate court or of a . . . trustee is drawn in question by reason of an alleged irregularity, . . . any party interested in or affected by

such act or proceeding may apply to the probate court having jurisdiction of the subject matter relative to which the act or proceeding has been had, and the court . . . may hear and determine the matter and confirm the act or proceeding, in whole or in part, and may authorize and empower the . . . trustee, or any successor . . . to ratify and confirm such act or proceeding and to execute and deliver such deeds, releases, conveyances and other instruments as may be found necessary therefor; but no act or proceeding shall be ratified or confirmed which the court might not have passed or authorized in the first instance upon due proceedings."

The Probate Court would undoubtedly have had power to authorize the sale of the Spring lots. The court was not trying title to the lots but was clarifying its earlier decrees and acts pursuant thereto. This is clear from the facts that it considered only those transactions relating to the trust under the will of Robert Bishop and that it ignored the chain of title to Robert Bishop. In the registration proceedings the Land Court might still determine that Robert Bishop never had title.

The appellants rely upon the principle that, where different courts of the same sovereign have concurrent jurisdiction of the same cause, the one whose jurisdiction is first duly invoked has exclusive authority. See *Old Colony Trust Co.* v. *Segal,* 280 Mass. 212, 214; *MacDonald* v. *Gough,* 327 Mass. 739, 743. This reliance is misplaced. There is no competition here for jurisdiction between the Probate Court and the Land Court. It was the latter court which suggested that the parties return to the Probate Court for any necessary correction in the records. It will be noted that the appellants filed in the Probate Court one of the petitions with which we are concerned.

3. We now reach the merits. We are of opinion that the probate judge erred in holding that the Curtis and Hurd Spring lots passed to The Robert Bishop Mfg. Co. under the deed of March 19, 1946, from the trustees, and in ordering Mr. Ramsey, as trustee, to give a confirmatory deed to Gullicksen.

The original deed to The Robert Bishop Mfg. Co. and the decree pursuant to which it was made were rightly found by the judge to constitute, together with the plan, "a clear and unambiguous particular description of the three parcels." The total area was given in the decree and in the deed as 60,750 square feet, more or less, and this was the sum of the areas of the three parcels shown on the plan, which neither showed nor referred to the Curtis and Hurd Spring lots. The added phrase "being all of the real estate belonging to the said Robert Bishop in the said Town of Wellesley" does not transfer the Spring lots. This is the effect of our cases.

In *Crabtree* v. *Miller,* 194 Mass. 123, a lease of a hotel described the premises as "buildings numbered 625 to 631 inclusive on Washington Street, Boston, Mass., together with the basement under said premises . . . meaning thereby all the real estate I now own on Washington Street excepting the building known as the Park Theatre." The lessor also owned a covered passageway leading from Washington Street. It was held that the lease included only the buildings on Washington Street, and that the lessee could not prevent the lessor from using the passageway in conjunction with the theatre. At p. 126, it was said, "The general rule is that where real property is described by a particular and definite description, the addition of an inconsistent general description does not enlarge the grant."

In *Cowden* v. *Cutting,* 339 Mass. 164, the decedent held title to three lots in Sudbury. A decree directed a commissioner to make partition of all the decedent's real estate in the Commonwealth. The deed of the commissioner described only two of the lots. It was held (pp. 169–170) that the sale had conveyed only the two lots specified and did not affect the title to the third lot. See cases cited at p. 172, n. 1. *Thayer* v. *Finton,* 108 N. Y. 394. Compare *Field* v. *Huston,* 21 Maine, 69.

The appellee refers to a principle of undoubted soundness to the effect that a court of equity has power to order the reformation of deeds or the execution of confirmatory

deeds to include property or parties omitted through error. See *Williams* v. *Carty,* 205 Mass. 396; *Andrews* v. *Charon,* 289 Mass. 1.   This principle, however, has no present application.   There has been no showing that the trustees originally intended to convey the Curtis and Hurd Spring lots, or that the negotiations for the sale to The Robert Bishop Mfg. Co. had covered these lots, and that their omission from the deed was due only to oversight or mistake.   On the contrary, the trustees, for aught that appears, did not consider that these lots were part of the trust estate.   The lots were not included in either the executors' or trustees' inventory.

The subsequent deed from The Robert Bishop Mfg. Co. to Gullicksen did, of course, go beyond the deed from the trustees to The Robert Bishop Mfg. Co., by including two lots which may or may not have been the Curtis and Hurd Spring lots.   There is some confusion in the description of these two lots.   Both are said to be on River Street, Wellesley, which was their right location, and their area is approximately the area of the two lots.   On the other hand, all the parcels are described as "being all of the real estate shown on the above-mentioned plans."   We have already seen that the Hyde & Sherry plan neither refers to nor shows the two lots.   There is no proof that The Robert Bishop Mfg. Co. acquired title under any deed except that of the trustees.

4..   The decree of May 22, 1963, as amended by decree of October 4, 1963, is reversed.   The deed from Mr. Ramsey, as trustee, to MacNeil and Bishop is to stand.   If necessary, the issue of the ultimate disposition of the Rice Spring lot shall be further heard in the Probate Court.

*So ordered.*