John MEYER and Goldie Meyer, a/k/a
Mrs. John Meyer, Appellants
(Defendants below),

v.

Robert ELLIS, Appellee (Plaintiff below).

No. 3439.

Supreme Court of Wyoming.

March 1, 1966.

Byron Hirst, Hirst, Applegate & Thomas, Cheyenne, for appellants.

W. A. Smith, Smith, & Harnsberger, Lander, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff Robert Ellis commenced an action against the defendants John Meyer and Goldie Meyer, husband and wife, for a determination of the respective rights of the parties to a triangular tract of land located in the SE ¼ SW ¼ of Section 28, Township 34 North, Range 100 West, 6th Principal Meridian, Fremont County, Wyoming. The complaint in substance alleges that plaintiff was fee simple owner of the tract; that plaintiff was in actual possession thereof; and that the defendants claimed an interest therein adverse to the plaintiff. Other allegations disclosed that plaintiff's claim was based on adverse possession. Although the complaint is couched in the form prescribed by our rules for an action to quiet title, Form 16, W.R.C.P., that was not the relief requested. The relief sought was that the defendants be enjoined from asserting any claim to the premises adverse to the plaintiff.

In answer to the complaint the defendants admitted that they claimed an interest in the land; denied the remaining allegations of the complaint; alleged that plaintiff was estopped to claim ownership; and by way of counterclaim affirmatively alleged ownership and asked that they be restored to possession or in the alternative that their title be quieted against the plaintiff. Other issues were raised by the pleadings which are not material here. The case was tried to the court sitting without a jury. Judgment was entered reciting among other things that plaintiff was "the owner of and entitled to the exclusive possession" of the premises involved and that defendants be "permanently enjoined from asserting any claim" to the premises "adverse to the Plain-

tiff." Defendants have appealed, asserting that the trial court erred in several respects.

Inasmuch as the errors claimed relate principally to the ultimate finding of the court "that W. H. Ellis [plaintiff's grandfather] and his successors in interest have been in the sole, exclusive, open, notorious, adverse and continuous possession of the lands in question since W. H. Ellis took possession of said property in 1918," it is appropriate first to refer to evidence pertinent to the finding. Such evidence is largely undisputed.

The defendants acquired record title to the SE ¼ SW ¼ above described on July 19, 1960. The plaintiff, on or about May 5, 1960, acquired record title from his grandfather, W. H. Ellis, to lands adjoining the defendants' forty on the north and on the east. The grandfather's deed to plaintiff described the lands conveyed in keeping with the government's subdivisional survey, and the tract here in dispute was not described or mentioned in any way. The tract materialized from a rather fortuitous circumstance. Sometime prior to the year 1918 the county constructed a road which ran diagonally across the northeast part of the forty above described. Also at some time prior to the year 1918—the exact date is not shown in the record and no one seemed to know the date—a barbed wire fence was constructed more or less parallel to the county road on its northeast side. While there was some reference to this fence in the testimony as being a "county fence" or "a road boundary fence," the record does not show who built it. C. E. Spurlock, Jr., a licensed engineer and surveyor, who made the survey in 1964 showing the location of the road, the county right of way, and the fence in question, simply described it as an "existing fence" located outside of the right of way. As a result of the construction of the road and the construction of the fencing the tract became isolated from the remaining portion of the defendants' property. It contained approximately six acres. The outer boundary lines of the triangular tract

may be appropriately described as consisting of a north portion of the east section line of the said forty; the east portion of the north section line of said forty; and the diagonal fence line on the northeast side of the county road. There were no divisional fences located on the north or east section lines of the tract and none have since been constructed. However, the fence line on the northeast side of the road and as extended through the southern portion of the SW ¼ SE ¼ of said Section 28 to the east tied in with a barbed wire fence marking the outer boundaries of the remainder of the Ellis property. In the year 1920 the grandfather attached woven wire to the fences described. From that time on the grandfather or the plaintiff utilized the disputed tract of land along with portions of their other lands lying north and east of the county road for the purposes of grazing livestock. So far as the record shows the resulting enclosure was sufficiently substantial to keep the grandfather's livestock in and the livestock of others out. It appears that the grazing of livestock was the only purpose for which the disputed tract was suitable. Subsequent to 1920 all of the fences were maintained by the grandfather or the plaintiff. Other than the placing of the woven wire on the fence representing the northeast boundary of the disputed tract, no improvements were ever made or placed thereon.

The record further discloses that none of defendants' predecessors in interest ever made use of the tract or objected to its use by the Ellises. The defendants offered some evidence tending to show that this circumstance may have resulted from a mutual understanding between the grandfather and a predecessor of the defendants, and we shall say more about this later. Neither was there a dispute concerning the location of the boundaries of the defendants' property and the adjoining Ellis property until early in May 1964. At that time a question as to ownership of the tract came up and the defendants caused a survey to be made. From the survey it was ascer-

tained that the fence line on the southwest of the triangular tract was inside the boundaries of the premises described in the defendants' deed and it was then that the defendant John Meyer went upon the disputed tract, removed the top wire of the southwest fence line, and undertook to lay it upon the section lines. Just how extensive Meyer's effort was is not disclosed by the record. In any event, that act precipitated the controversy here. Perhaps we should also mention that there was no testimony to the effect that the grandfather ever advised defendants' predecessors that he was claiming the property as his own or that plaintiff ever advised anyone that he was claiming ownership of the property until the filing of his complaint herein. Plaintiff testified that he had made no effort to ascertain the boundaries of his grandfather's land but had assumed that the disputed tract was within those boundaries.

The parties also agree that the defendants or their predecessors have always paid the taxes levied upon the disputed tract.

The foregoing recital of the evidence will be augmented where necessary in discussing the several contentions of the defendants.

The principal contention of the defendants is that plaintiff failed to prove that he had acquired ownership of the disputed tract by adverse possession, upon which he wholly relied. To the extent the contention is directed at the determination of the trial court that plaintiff was the "owner" of the premises and "entitled to the exclusive possession" thereof against the world, we are inclined to agree. Plaintiff proved no title or such right in himself by adverse possession or otherwise. There being no evidence to support the finding and conclusion of the trial court on this phase of the case, the judgment in that respect was erroneous.

Defendants argue that such a result was compelled for the reason plaintiff could not "tack" upon the adverse possession of his grandfather. We have, of course, recog-

nized the doctrine of tacking. Bryant v. Cadle, 18 Wyo. 64, 104 P. 23, 27, modified on rehearing 106 P. 687. Whether we went so far in Tissino v. Mavrakis, 67 Wyo. 560, 228 P.2d 106, 116, as to hold—as some authorities do—that resort to the doctrine could not be had unless the premises involved were mentioned in the deed or conveyance to the claimant, we need not decide. As we view the record in the instant case the doctrine has no application. The doctrine was engrafted upon the general principles of the law of adverse possession for the purpose of meeting the requirement of "continuous" possession for the statutory period. Du Val v. Miller, 208 Or. 176, 300 P.2d 416, 419, 420; Rohner v. Neville, 230 Or. 31, 365 P.2d 614, 618, rehearing denied 368 P.2d 391; El Cerrito, Inc. v. Ryndak, 60 Wash.2d 847, 376 P.2d 528, 533. If, as the trial court found, the grandfather long prior to the year 1960 acquired title to the disputed tract by adverse possession, such title became vested and was good against the world, including the predecessors of the defendants. Bentley v. Jenne, 33 Wyo. 1, 236 P. 509, 512; Stryker v. Rasch, 57 Wyo. 34, 112 P.2d 570, 573, 576, 136 A.L.R. 770, rehearing denied 113 P.2d 963. "Tacking" could not aid or detract from that title and such title could be divested only by a conveyance, by descent or by operation of law. Du Val v. Miller, supra; El Cerrito, Inc. v. Ryndak, supra.

Thus, putting aside for the moment the question of the conclusion of the trial court as to the grandfather's title, our concern with respect to plaintiff's alleged ownership, as indicated, was whether or not the grandfather had conveyed his interest by the deed delivered to plaintiff in 1960. The conclusion that he did not seems inescapable. The deed in clear and unambiguous terms described the lands conveyed in keeping with the official subdivisional survey. The SE ¼ SW ¼ of Section 28, containing the tract here in dispute, was not mentioned. There is no evidence of extraneous circumstances accompanying the delivery of the deed for the reason the deed had been plac-

ed in escrow in the year 1958 and was not delivered to plaintiff until after the death of his grandfather and grandmother. Neither was any effort made my plaintiff in the court below to have his deed reformed. Of course, that would have necessitated the presence of other parties. Under those circumstances it did not lie within the power of the trial court to enlarge plaintiff's grant. Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409, 411; Fleischman v. Hearn, 141 Md. 463, 118 A. 847, 848–849; Gullicksen Manufacturing Co. v. MacNeil, 347 Mass. 568, 199 N.E.2d 195, 200; Lurvey v. Burrell, Mo., 317 S.W.2d 458, 461.

It does not follow, however, that such error required dismissal of the plaintiff's action. There remained in the case the issue of plaintiff's right of possession as opposed to the defendants' claimed right of possession, which the defendants advanced by their counterclaim. Under Rule 13(i), W.R.C.P.,[1] the trial court was empowered to determine that issue as between the parties before it. So far as plaintiff's rights were concerned, his complaint alleged that he was in possession of the disputed tract. The defendants by their counterclaim in essence so admit. As a person in possession the plaintiff was entitled to bring the action. Section 1–958, W.S.1957. The admission of the defendants constituted a prima facie showing of an interest in the land that was good against any claimant that could not show a better right. See Ben Realty Co. v. Gothberg, 56 Wyo. 294, 109 P.2d 455, 461; Durell v. Abbott, 6 Wyo. 265, 44 P. 647, 648; Hallmark v. Baca, 61 N.M. 420, 301 P.2d 527, 528; 1 Thompson on Real Property, § 24, p. 113 (1964 Repl.). Plaintiff's showing was buttressed by testimony which was uncontradicted. He testified that he moved upon the grandfather's lands in the year 1945. On or about that date he and his grandfather entered into a partnership for the purpose of carrying on a farm and ranch operation and that arrangement continued until the death of the grandfather.

It was shown that the disputed tract was used for the partnership business, along with the grandfather's other lands, during that time. Subsequently, the plaintiff remained in possession and operated the farm and ranch as his own. His use and occupancy of the disputed tract were not questioned or interfered with until the defendant John Meyer entered and removed the top wire. On that state of the record it is clear from the authorities cited that the trial court could conclude, as it did, that plaintiff's interest in the land was entitled to protection unless the defendants were able to show a better right.

That burden, as defendants argue, was met when the defendants produced evidence of their record title. It was then incumbent upon the plaintiff to overcome the defendants' prima facie showing. Rue v. Merrill, 42 Wyo. 511, 297 P. 379, 384; State v. Moore, Wyo., 356 P.2d 141, 144. That returns us to consideration of whether or not there was sufficient evidence to support the conclusion of the trial court that the grandfather had acquired title to the disputed tract by adverse possession. As we view it, a determination of that question will also readily dispose of the defendants' remaining contentions.

For example, if the trial court was correct, the defendants' defense of estoppel based upon a lease of the defendants' lands —purportedly including the disputed tract —by plaintiff on June 13, 1960, was not sustained as defendants argue. In the first instance this was not a lease negotiated on behalf of the grandfather. Whatever plaintiff did on his own behalf could not affect the grandfather's title. The same is true of plaintiff's efforts to buy his peace through an exchange of lands with the defendant. While those matters have relevancy if occurring during the running of the statutory period as bearing upon the nature of the possession, it is the law that an acknowledgment of the title of a prior owner does not serve to divest a title previ-

---

1. "Judgment on a counterclaim or cross-claim may be rendered if the claims of the opposing party have been dismissed or otherwise disposed of."

ously acquired by adverse possession. Pitts v. Pitts, 213 Ark. 379, 210 S.W.2d 502, 505; Deponte v. Ulupalakua Ranch, Limited, 48 Hawaii 17, 395 P.2d 273, 275, rehearing denied 48 Hawaii 149, 396 P.2d 826; 5 Thompson on Real Property, § 2552, pp. 574–575 (1957 Repl.).

Turning now to the evidentiary question with respect to the grandfather's title, it was necessary for plaintiff to show by sufficient substantial evidence that the grandfather's possession was "actual, open, notorious, exclusive, and continuous for the statutory period, hostile, and under color of title or claim of right." City of Rock Springs v. Sturm, 39 Wyo. 494, 273 P. 908, 910, 97 A.L.R. 1; Bryant v. Cadle, 18 Wyo. 64, 104 P. 23, 27, modified on rehearing 106 P. 687. In view of the undisputed evidence recited above concerning the fencing and undisturbed use by the grandfather for some forty years, it is clear that the trial court was warranted in concluding that the first five essential elements mentioned were clearly established. In fact, defendants do not contend otherwise. Their attack is centered upon the claimed lack of evidence to support the determination that the grandfather's possession was "hostile" and under a "claim of right." In substance it is contended that even though it might be held that plaintiff made out a prima facie case in this respect, it was overcome as a matter of law by the evidence offered in support of their defense that such possession was permissive in its inception and remained so during the grandfather's lifetime.

Directing our attention for the moment to the claimed lack of evidence, we must, as we have often said, review such evidence in keeping with the rule that the judgment of the trial court is to be given the benefit of all inferences reasonably to be drawn from the evidence favorable to the prevailing party. Kinsley v. McGary, Wyo., 390 P.2d 242, 243. In view of the fact that the trial court apparently regarded the grandfather's possession of the disputed tract as having been taken by inadvertence and mistake, which as we shall point out finds support in

the record, it will be helpful also here to set forth certain guiding principles pronounced by us in the Sturm case, at 273 P. 915–916, which in a large measure indicate the disposition that must be made of the defendants' contention. It was there said:

" * * * The law contemplates that rights in land may be lost to another by means of adverse possession. We are not the judges of the wisdom of that. The prime object in prescribing how such adverse possession shall be made manifest, of what elements or requisites it shall be composed, is to advise the real owner that his ownership is in danger, and the law has deemed the time fixed as sufficiently long, so as to give him ample opportunity to protect his right; and if he fails to do so, when thus advised, within the time fixed, he is considered as having acquiesced in the transfer of ownership. Monnot v. Murphy, 207 N.Y. 240, 100 N.E. 742. Bearing this in mind, it is a reasonable rule that, when a man has occupied a piece of ground, though under a mistaken belief as to the true boundary, for the period prescribed by law, openly, notoriously, exclusively, and in a manner plainly indicating that he acted as owner thereof, the presumption should be, in the absence of explanatory circumstances showing the contrary, that he occupied the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right. * * * "

In the discussion preceding the foregoing pronouncement, it was also emphasized that in determining the nature of the possession more reliance was to be placed upon what a claimant had done to hoist his "flag" rather than to belabor the force of what the claimant said or might not have said or what someone said concerning the nature of the possession. The case has been regarded by other authorities as aligning us with the well recognized rule that absence a clear showing to the contrary, long continued pos-

session, coupled with complete dominion over the property and open and visible acts of ownership, gives rise to the presumption that the possession was adverse. See Hammer v. Bell, Okl. 390 P.2d 492, 499; Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 P.2d 830, 835–836; the annotations in 97 A.L.R., pp. 58–64, inclusive; 80 A.L.R.2d 1181–1182; 3 Am.Jur.2d, Adverse Possession, § 39, pp. 126–127. In this connection we would also point out that we adhered to those general principles in State v. Moore, Wyo., 356 P.2d 141, 144–145.

Summarizing the evidence pertinent to the general principles, it seems apparent that there was sufficient evidence upon which the trial court could base its conclusion. The fencing, including the fencing on the disputed tract, formed an actual and visible enclosure of the disputed tract with other lands acquired by the grandfather in the year 1918. From that time until 1958 the grandfather asserted dominion over the fencing, improved it by making the fencing "sheep tight" in the year 1920, and thereafter maintained the fence. It is argued that the fencing on the disputed tract was placed there by the county rather than by the grandfather's predecessor and thus an inference that the grandfather's predecessor mistakenly constructed the fence as a part of the boundary enclosing his ranch could not be supported. While it is true that the witness Walter K. Ellis, father of the plaintiff, who went upon the ranch with the grandfather in 1918 and remained there until 1938, made some reference to the fence as a "county fence" or "a road boundary fence," he also testified that he did not know who built the fence or when, and no one else testified that they knew who built it or when. At that time there was no statute requiring the county to fence a road. The commissioners could order the removal of fences, § 3083, W.C.S.1920 (now § 11–536, W.S.1957), or "at the expense of petitioners" for a road the commissioners could "authorize the erection of a lawful fence upon the right of way." Section 3084, W.C.S.1920 (now § 11–537, W.S.1957). In view of the statute and in view of the survey placing the fence of the disputed tract outside the right of way, we are unable to say that the court erred in finding that the grandfather, although mistaken, regarded it as a part of the boundary enclosing his ranch.

With respect to use, the evidence is undisputed, as we stated above, that the tract in question was only suitable for grazing; that the grandfather utilized it for that purpose for a period of some forty years; and that this was well known in the community. Our holding in Bruch v. Benedict, 62 Wyo. 213, 165 P.2d 561, 569, teaches that grazing would constitute a sufficient use under such circumstances.

It is true, as argued by defendants, that one circumstance deserving of attention, according to the authorities, was missing and that was the failure of the grandfather to pay the taxes upon the disputed strip. Certainly such failure is an element to be considered along with other circumstances in the case and would tend to weaken a claim of ownership by adverse possession. Nevertheless, it is not conclusive. Converse v. Kenyon, 178 Neb. 151, 132 N.W.2d 334, 340; Anderson v. Francis, 177 Okl. 47, 57 P.2d 619, 622; Northwoods' Development Corp. v. Klement, 24 Wis.2d 387, 129 N.W.2d 121, 124. Furthermore, our statute, unlike the statutes of several other jurisdictions, does not require that claimant show payment of the taxes, and in view of the fact that a description of the disputed tract separate and apart from the lands taxed to the grandfather was not available for taxation purposes until the year 1964, we cannot say that the trial court erred in giving little weight to such circumstance.

Consequently, in view of the general principles set forth above, and particularly the statement made in Sturm at 273 P. 916 that "A fence inclosing land may be sufficient under some circumstances" to raise the "flag" of an adverse claimant, which incidentally finds much support in the authorities, Rorebeck v. Criste, 1 Ariz.App. 1, 398 P.2d 678, 681; Smith v. Underwood,

234 Ark. 469, 352 S.W.2d 824; Beneficial Life Ins. Co. v. Wakamatsu, supra; Walter v. Jones, 15 Ill.2d 220, 154 N.E.2d 250, 253; Grayson v. Robinson, 240 Miss. 59, 126 So. 2d 247, 249; Norgard v. Busher, 220 Or. 297, 349 P.2d 490, 495, 80 A.L.R.2d 1161, we cannot hold that the trial court's conclusion was not supported by sufficient evidence.

This, of course, cast the burden upon defendants to come forward with their evidence in support of their claim that the grandfather's possession was permissive, and although defendants insist that the trial court erred in requiring them to carry that burden, the contention is without merit under the holding in the Sturm case. It is true, of course, as defendants' counsel argues, that if the grandfather's possession was shown to be permissive, then the grandfather acquired no title by adverse possession. Johnson v. Szumowicz, 63 Wyo. 211, 179 P.2d 1012, 1017.

In order better to understand the contention it will be recalled that the county road which isolated the disputed tract also isolated a small tract of some two or more acres of the grandfather's land in the southwest corner of the SW¼ SE¼ of said Section 28 which joined defendants' property on the west. It is asserted that an oral agreement was entered into between the grandfather and the defendants' predecessors whereby the grandfather was permitted to use the disputed tract in exchange for use by defendants' predecessors of the grandfather's small tract.

To sustain their defense the defendants rely upon the testimony of Mrs. Alice Leseberg, who with her husband, now deceased, moved upon the farm now owned by the defendants in the year 1927. She testified that she knew about the county road and the isolation of the respective tracts; that she was acquainted with the grandfather and knew he used the disputed tract; that she and her husband used the grandfather's tract; and that her husband once told her an exchange of such use had been agreed upon between him and the grandfather. No authorities were cited that this latter statement was entitled to weight, but in any event it will be noticed that the witness did not testify to any circumstance prevailing at the time the grandfather actually went into possession of the land in the year 1918 or to any conversation had with the grandfather as to the circumstances under which the grandfather was using the land. We would also point out that the time of the conversation with her husband was not definitely fixed. From the testimony of defendants' witness Lafe Bell we think the trial court could infer that the conversation did not take place until sometime during the years 1933–1935, which would have been some three years after the statute had run. Bell, a neighbor of the Lesebergs, said that at one time during those years he observed Mrs. Leseberg's husband working on the small Ellis tract. He went over to see what the husband was doing. The husband was moving the fencing and told the witness that the Ellises were using his land over the hill (the disputed tract) and he had made a deal with the grandfather whereby he was going to use the small Ellis tract. Mrs. Maude Henderson, a predecessor in interest of the defendants, and successor to the Lesebergs in the year 1946, was also called as a witness by the defendants. She testified that during the time they lived upon the farm they had farmed the small tract of the grandfather's property and the grandfather in turn was using the disputed tract. When asked if she or her husband had an understanding concerning such use, she answered "no" and said she could not remember "that any permission was ever asked or granted." She then testified to a conversation had with plaintiff sometime prior to 1958 in which plaintiff had said that "My grandfather and Mr. Leseberg had an agreement about this land" but that he did not "recall if anything had ever been done about it." In response to a question by the court she further said the only understanding she had was "that it [the exchange of use] had been arranged and we had just let it be that way" and further that they had never raised an objection to use of the disputed tract by the grandfather.

Plaintiff did not deny the conversation with the witness, but here again such conversation did not take place until almost forty years after the grandfather had taken possession and the admission, as we view it, was entitled to little, if any, weight. There was further evidence that plaintiff a short time prior to this litigation had made the same admission to others but, as indicated, this was of little consequence.

As opposed to the testimony of the defendants' witnesses, the father of plaintiff, Walter K. Ellis, who moved upon the ranch with the grandfather of plaintiff in the year 1918 and resided there and worked the ranch with the grandfather until about the year 1938, testified that he was unaware of any understanding with respect to an exchange of use although he did know that defendants' predecessors were using the small Ellis tract. He also testified that so far as he knew there was no trouble over the disputed tract until the spring of 1964, when the survey was made. Plaintiff said that he had always "assumed" that his grandfather owned the tract. No doubt the trial court gave consideration to the fact that the grandfather had apparently said nothing to his own son or his grandson that his occupation and use of the disputed tract resulted from an agreement with defendants' predecessors.

In weighing the evidence pertaining to the issue of "permissive use," the trial court at the conclusion of the trial stated:

"* * * He [Meyer] relies upon the statements of persons other than Mr. Ellis, Sr., or the grandfather Ellis, to establish what he calls a permissive use. The question before the Court is whether or not he has met that burden of proof. In the Court's mind, the testimony of these various witnesses, statements that they have made, might be construed any number of ways. I don't think they are sufficient unto themselves to show that Mr. Ellis was a party to or entered the possession of this particular tract under any agree-

ments which would be constituted a permissive use."

We readily concede that the evidence with respect to this issue, together with the lay of the land as related to the section lines and the lack of more direct evidence indicating the intention of the grandfather at the time he went into posesssion, raised a close question. Nevertheless we cannot say that the court erred as a matter of law in its ultimate finding that the grandfather obtained title to the disputed tract by adverse possession. As we said in City of Rock Springs v. Sturm, 39 Wyo. 494, 273 P. 908, 916, 97 A.L.R. 1, when there is a question of doubt as to whether the possession was adverse, it becomes a question of fact to be determined by the trier of the facts.

It would therefore follow that the portion of the judgment enjoining the defendants from interfering with the possession of the plaintiff was not erroneous and must be affirmed for the reason that defendants acquired no title to the disputed tract from their predecessor in interest. Even though this has the effect of leaving the plaintiff in possession, we think defendants cannot complain of that inasmuch as they failed to establish a superior right.

The case is remanded to the district court with directions to modify the judgment in keeping with the views herein expressed. In all other respects the judgment is affirmed.

Mr. Chief Justice PARKER concurs in the result.

Mr. Justice McINTYRE, dissenting.

The decision reached in this case is unfortunate, in my view, because it distorts the rule that adverse possession ripens into land ownership only when that possession is based on color of title or claim of right. See Bolln v. Colorado & S. Ry. Co., 23 Wyo. 395, 152 P. 486, 486–487; Bruch v. Benedict, 62 Wyo. 213, 165 P.2d 561, 566; and Amerada Petroleum Corporation v. Rio Oil Co., D.C.Wyo., 225 F.Supp. 907, 913.

As stated in the Bolln case, where a hotel encroached on railroad land and owners of the hotel held possession for the prescriptive period but not under a claim of right or color of title, the hotel owners acquired no title to the land.

The need for a claim of right, in the absence of color of title, in order to initiate adverse possession, is pointed up in City of Rock Springs v. Sturm, 39 Wyo. 494, 273 P. 908, 910, 97 A.L.R. 1, which is relied on to support the decision reached in this case.

The holding in the Sturm case was that it is a reasonable rule that, when a man has occupied a piece of ground, "though under a mistaken belief as to the true boundary," for the period prescribed by law, the presumption should be, "in the absence of explanatory circumstances showing the contrary," that he occupied the land adversely and under claim of right.

The circumstances in the case at bar are such that there could be no "mistaken belief" as to the true boundary. Also there was a presence and not absence of "explanatory circumstances" showing the contrary, with respect to claim of right.

All parties are bound to know that regular tracts have boundary lines running substantially east and west or north and south. If a river cuts off a corner and for convenience a fence follows the river bank, it does not and cannot mean the owner is claiming the fence to be on his property line. In such a case, there would be no proof of a claim of right on the part of the owner. In fact, the circumstances themselves would prove the contrary.

The same situation prevails in this case, where a road cuts off a corner of land and the fence follows the road. Everybody knows the owner is not claiming the fence to be a marking of his property line.

In this particular case the circumstances are amplified, because a tract of land actually owned by the grandfather was cut off on the other side of the road and not used by him. He could not help knowing he actually owned the additional tract of land which was not occupied or used.

The defendants here offered evidence tending to prove the existence of a written or oral contract for the exchange of use of tracts of land. Although the trial court was entitled to find against them with respect to the actual existence of such a contract, the plaintiff by the same token failed to prove his grandfather ever claimed to own the tract of land in dispute. This burden was clearly on the plaintiff. In fact, the circumstances are such that the grandfather could not possibly have claimed the fence to be a fence enclosing his rightfully owned land.

A diagonal fence, following the general course of a river or road and obviously not following what any reasonable person would consider a boundary line, clearly constitutes, in my opinion, an explanatory circumstance showing the contrary and negativing any presumption of a claim of right. This situation is quite different from the situation where a person is mistaken as to his true boundary and inadvertently encloses or builds upon and occupies a small strip of land adjoining his own.

In the latter case it is clear from the circumstances that the owner is claiming his boundary to be where he has established it and is claiming to own the strip in question. In our case, however, it is just as clear that the fence was intended to follow the road and not to mark a boundary line and not to be a claim of ownership.

In my opinion the judgment should have been reversed.